**UNITED STATES of America**

v.

**AMERICAN UNION TRANSPORT, INC., Transamerican Steamship Corporation, Edwin A. Vargas, Swan Products Export Corporation and Alvin Gross, Defendants.**

**Crim. A. No. 81-63.**

United States District Court
D. New Jersey.

Aug. 17, 1964.

David M. Satz, Jr., U. S. Atty., by Oliver Lofton, Asst. U. S. Atty., for the Government.

Leonard Estrin, Newark, N. J., for defendants American Union Transport, Inc., Transamerican Steamship Corporation and Edwin A. Vargas; Galland, Kharasch, Calkins & Lippman, by George F. Galland, Amy Scupi, Washington, D. C., Dougherty, Ryan, Mahoney & Pellegrino, by Thomas J. Short, New York City, of counsel, for said defendants.

WORTENDYKE, District Judge.

In a twenty-count Information, filed March 6, 1963, the Government charges the defendants with violations of section 16 of the Shipping Act, 1916, 46 U.S.C. § 815. The pertinent language of the section provides:

"It shall be unlawful for any common carrier by water, or other person subject to this chapter, either alone or in conjunction with any other person, directly or indirectly—

"First. To make or give any undue or unreasonable preference or advantage to any particular person, locality, or description of traffic in any respect whatsoever, or to subject any particular person, locality or description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatsoever.

"Second. To allow any person to obtain transportation for property at less than the regular rates or charges then established and enforced on the line of such carrier by means of false billing, false classification, false weighing, false report of weight, or by any other unjust or unfair device or means. * * *

"Whoever violates any provision of this section shall be guilty of a misdemeanor punishable by a fine of not more than $5,000 for each offense."

Defendant American Union Transport, Inc., hereafter Carrier, is alleged to have been, at all relevant times, a common carrier by water. Defendant Transamerican Steamship Corporation, hereinafter Transamerican, is alleged to have been acting as operating agent for ships owned by Carrier. Defendant Edwin A. Vargas, hereinafter Vargas, is alleged to have been Transamerican's Traffic Manager. Defendant Swan Products Export Corporation is hereinafter referred to as the Shipper.

The Information charges that Carrier, Transamerican and Vargas unlawfully allowed Shipper to obtain transportation for property at less than actual and regular established rates by Carrier's acceptance of Shipper's false measurements of the shipments "well knowing such measurements to be false" whereby "an undue and unreasonable preference advantage" was obtained by Shipper reflected in resultant underpaid freight charges. Each of the first ten counts of the Information charges Carrier, Transamerican and Vargas with a separate violation of the Section upon a different date. In Counts Eleven through Twenty, respectively, a separate violation of the Section, upon the same dates, is charged against Shipper and against defendant Alvin Gross, hereinafter Gross, Shipper's Export Manager, consisting of their having "unlawfully, knowingly, and willfully, by means of false measurements and false billing, obtained transportation of shipments of sanitary ware products from the Port of Newark to Puerto Rico * * * for less than the applicable rates and charges established by the Carrier" with resultant underpaid freight charges.

The defendants Carrier, Transamerican and Vargas have moved for a dismissal of the Information upon the ground that the Federal Maritime Commission, hereinafter Commission, has exclusive, primary jurisdiction to determine whether Carrier's alleged acceptance of Shipper's measurements (a) constituted a "knowing" acceptance of Shipper's allegedly false measurements, and (b) resulted in an "undue and unreasonable preference and advantage being given to the Shipper." The defendant Shipper, having pleaded nolo contendere on June 5, 1964 to Counts 13, 16 and 20

of the Information, does not appear as a party to the instant motion.

The Federal Maritime Commission was created by Reorganization Plan No. 7 of 1961, pursuant to the provisions of the Reorganization Act of 1949, 63 Stat. 203, as amended, 46 U.S.C. § 1111, note, and to that Commission were transferred functions previously vested in the Federal Maritime Board under Sections 14–20, inclusive, of the Shipping Act, 1916, as amended (46 U.S.C. §§ 812–819 and 821–832), including such functions with respect to the regulation and control of rates, services, practices, and agreements of common carriers by water and of other persons.

Sections 821 through 829 of Title 46 empower the Commission to investigate, on the complaint of any person or on its own motion, any violation of the Shipping Act, 1916, including § 815, and to make, after a hearing, an order to remedy any violation found. There is also given the power to make an order directing the payment of a reparation to the complainant injured by a violation. The Commission is also empowered, *inter alia*: (1) to order the discontinuance of any discriminatory rates and charges or unreasonable regulations or practices by common carriers in foreign and in interstate commerce, and to prescribe what it determines to be just and reasonable rates or regulations, 46 U.S.C. §§ 816–817; (2) to disapprove or modify any agreement between carriers by water, or persons carrying on business connected with carriers, which it finds discriminatory, 46 U.S.C. § 814; and (3) to determine whether there has been a violation of 46 U.S.C. § 812, which prohibits rebates and discrimination by carriers in respect of transportation between this country and foreign ports, and to certify the fact of such violation to the Commissioner of Customs who will then refuse the right of entry to such carrier's ships, 46 U.S.C. § 813.

There is, however, no provision in the Act which gives the Commission the power to determine the guilt or innocence of a person charged with a violation of any of the criminal provisions of the Act, including 46 U.S.C. § 815, nor the power to impose a penalty for any such violations. With respect to an alleged violation of 46 U.S.C. § 815, the Commission does have the power, as described above, to refuse reparations sought by a violator of that section, American Union Transport v. United States, 1958, 103 U.S.App.D.C. 229, 257 F.2d 607, cert. den. 1958, 358 U.S. 828, 79 S.Ct. 46, 3 L.Ed.2d 67, and to order that such violations cease in the future.[1]

While it is true that the doctrine of primary jurisdiction, which compels a court to dismiss or defer an action because exclusive jurisdiction over all or part of the subject matter has been given to an administrative agency, is applicable to criminal prosecutions as well as to civil actions, United States v. Pacific & Arctic Co., 1913, 228 U.S. 87, 106–108, 33 S.Ct. 443, 57 L.Ed. 742; United States v. Alaska Steamship Co., D.C.Wash.1952, 110 F.Supp. 104, 111; In re Grand Jury Investigation of the Shipping Industry, D.C.D.C., 1960, 186 F.Supp. 298, 309, the determination of whether or not exclusive primary jurisdiction of a criminal prosecution rests with an administrative agency, including the question of the importance of the agency's experience, is based on the purposes of the statute which created the agency and the relation thereto of the facts and issues presented by the particular case, Jaffe, "Primary Jurisdiction," 77 Harvard Law Review, 1037, 1040–1041 (1964). See Pan American World Airways v. United States, 1963, 371 U.S. 296, 305, 83 S.Ct. 476, 9 L.Ed.2d 325; United States v. R.C.A., 1959, 358 U.S. 334, 347, 79 S.Ct. 457, 3 L.Ed.2d 354. In United States v. Borden Co., 1939, 308 U.S. 188, 205–206, 60 S.Ct. 182, 84 L.Ed. 181, the

1. Defendants have submitted to the Court a copy of a decision of the Commission's Presiding Examiner, Hasman & Baxt, Inc. v. Valencia Baxt Express Inc., dated June 19, 1964, Docket No. 1150, in which a cease and desist order was entered based on conduct by a shipper similar to that charged here.

Court found that the Capper-Volstead Act, which gave the Secretary of Agriculture certain powers of control over the production and marketing of agricultural products, did not supersede the criminal provisions of the Sherman Act, and the Secretary therefore did not have exclusive primary jurisdiction over a prosecution alleging violation of the Sherman Act.

In the language of the Shipping Act, 1916, there is nothing expressed or implied which suggests that the Commission has exclusive, primary jurisdiction over violations of 46 U.S.C. § 815. The Commission's regulatory powers under §§ 816–817 give it the power to determine the justness and reasonableness of the rates charged by or the regulations and practices of the carriers, and to prescribe what it deems to be reasonable and just rates and regulations. § 815, on the other hand, prohibits certain conduct which involves the evasion of the proper application of the rates which would otherwise be applicable. The Commission has no power to regulate such conduct because it is specifically prohibited by the statute. The Commission's regulatory power would in no way be affected by a prosecution seeking to punish past violations of the Act. Moreover, the Commission is not even given the express power to determine whether a violation of § 815 has occurred as it is by § 813 to determine whether there has been a violation of § 812.

More significantly, there is nothing in the allegations of the present Information to suggest that this case involves a complex factual picture which should first be examined by the Commission because it has developed special expertness in this area. Here there are merely ten alleged instances of the carrier's knowing acceptance of the shipper's allegedly false measurements. There is nothing in such a factual situation which would require the assistance of the Commission.

The defendants argue that the Supreme Court decision in Pacific & Arctic, supra, compels a finding that exclusive primary jurisdiction over this prosecution rests with the Commission. In that case the indictment contained two counts which charged violations of the antitrust laws and three counts charging violations of the Interstate Commerce Act. The antitrust counts charged a combination of defendants to eliminate competition in the water and railroad transportation of freight and passengers between this country and British Columbia, and the I.C.A. counts charged that, as a part of the antitrust conspiracy, a certain steamship company was discriminated against by being charged higher freight rates than were charged to competing defendant steamship companies. The Supreme Court affirmed the dismissal of the I.C.A. counts of the indictment because the Interstate Commerce Commission had exclusive primary jurisdiction over the case before any criminal prosecution could be based on it.

In rejecting the Government's arguments that the I.C.C. had no power over the criminal provisions of the law and that to defer to the Commission would be to give it final criminal jurisdiction, the Court said:

"The contentions of the government would be formidable indeed if the interstate commerce act was entirely criminal. But it is more regulatory and administrative than criminal. It has, it is true, a criminal provision against violations of its requirements, but some of its requirements may well depend upon the exercise of the administrative power of the Commission. This view avoids the consequences depicted by the government. It keeps separate the civil and criminal remedies of the act, each to be exercised in its proper circumstances. * * * And it would, in our judgment, be an erroneous view to take that the great problems which the act was intended to solve and the great purposes it was intended to effect, should be considered of less consequence than the facility which

should be given to some particular remedy, civil or criminal." 228 U.S. at pp. 107–108, 33 S.Ct. at p. 449.

Pacific & Arctic is inapposite to the present case for two reasons. First, that prosecution grew out of a single large conspiracy of railroads, steamship companies and warehousing companies who allegedly were attempting to destroy competition in a large sector of the combined water and railroad transportation industry. The case therefore presented an extensive and complicated factual picture, involving three different types of commercial transportation, and there was a clear need for calling on the experience of the Commission before criminal charges should be acted upon.[2]

Second, Pacific & Arctic is inapposite because, as the quotation above demonstrates, it was a criminal prosecution based on violation of the requirements of the Commission which were probably created by rule of the Commission itself in exercising its administrative power. In that case, a determination by the Commission of whether conduct violated the rules it created would be relevant. In the present case, however, the criminal charges are based on alleged violations of the explicit and specific provisions of 46 U.S.C. § 815, not on any rule of the Maritime Commission. The Commission would have no power to enlarge or contract the scope of § 815, and, because § 815 was not created by the Commission as a result of its experience in the area, the Commission's views as to whether § 815 had been violated would not be relevant.

The defendants also argue that their principal reason for claiming that exclusive primary jurisdiction rests with the Commission here is that the alleged conduct of the defendants in knowingly accepting the Shipper's false measurements, is not specifically prohibited by § 815, but comes within, if at all, the general prohibition of § 815 against the use of " * * * any other unjust or unfair * * * means * * * ". They argue that the Commission's wide experience should be consulted to determine whether the moving defendants' alleged practice of accepting all Shipper's measurements, which they claim is the only feasible method of doing business, is proscribed by the general language of § 815.

In this case, however, the determination of whether the alleged conduct, if proven to have occurred, comes within the general language of § 815 is a simple question of law—the interpretation of the intent of the statute—and, on this question, the experience of the Commission is irrelevant. It is no more able or expert in interpreting the meaning and intent of § 815 than would be a Court. In Burnham v. United States, 1 Cir. 1961, 297 F.2d 523 where the defendant was charged with aiding a partnership in its operation as a contract carrier, without a permit, in violation of the Interstate Commerce Act, the Court rejected the defendant's argument that primary jurisdiction over the charge rested in the Interstate Commerce Commission. The Court held that it alone, without the assistance of the Interstate Commerce Commission, could construe the document under which the partnership was operating, and determine whether it was merely a lessee or a contract carrier within the definition of the Act. See Great Northern Railway Co. v. Merchants Elevator Co., 1922, 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943; River Plate and Brazil Conferences v. Pressed Steel Car Co., 2 Cir. 1955, 227 F.2d 60, 63.

Finally, defendants have submitted to the Court a copy of a proposed regulation of the Maritime Commission which

2. In United States v. Alaska Steamship Co., supra, the indictments, as in Pacific & Arctic, charged widespread violations of the Sherman Act by several defendants allegedly conspiring to restrain competition in the water and motor carrier transportation of freight and persons in a large segment of such commerce. There were no counts charging violation of the criminal provisions of the Shipping Act, 1916.

would require carriers, in transporting automobiles, to accept, for the purpose of computing charges, automobile manufacturers' standard weights and measurements. The defendants argue that if carriers must accept the manufacturers' measurements for shipments of cars, they should not be prosecuted for doing the same thing with shipments of a different product. The proposed rule is of no help here because it was promulgated under the Commission's power to prescribe reasonable regulations and practices under §§ 816–817, and has nothing to do with a determination of whether a carrier's *knowing* acceptance of a shipper's *false* measurements is violative of § 815. The proposed rule is also irrelevant because it requires the acceptance of the auto manufacturers' standard measurements, not the measurements of the shipper.

In summary, the charges contained in the Information in this case present a relatively simple factual situation, and a legal question of the construction of § 815. The exercise of jurisdiction by a Court over this criminal prosecution, based entirely on past conduct allegedly violative of § 815, will not in any way interfere with the Commission's regulatory functions under the Act. Consequently, the Commission does not have exclusive primary jurisdiction over the conduct on which the criminal charges are based. The motion to dismiss the Information is therefore denied.

It should be noted that I reach this conclusion without regard to the letter (attached to an affidavit in opposition to the motion) from the Commission's General Counsel to the Criminal Division of the Department of Justice, in which the General Counsel states that the Commission is of the opinion that the alleged misconduct of the defendants presented no reason for involving the specialized judgment of the Commission in a formal administrative proceeding.

The Government may present an order in conformity with the views expressed in this opinion.