DAMPSKIBSSELSKABET TORM A/S, Respondent-Appellant, v. P. L. THOMAS PAPER CO., INC., et al., Appellants-Respondents.

First Department, November 10, 1966.

*William G. Mead* of counsel (*Haight, Gardner, Poor & Havens,* attorneys), for respondent-appellant.

*Gerald H. Ullman* for P. L. Thomas Paper Co., Inc., appellant-respondent.

*Sheldon Lowe* of counsel (*Milton E. Polakoff,* attorney), for Tidewater Forwarding Co., Inc., appellant-respondent.

STEVENS, J. Defendants appeal from an order entered April 27, 1965 granting plaintiff's motion for summary judgment against the defendants and from the judgment entered thereon May 28, 1965 in the amount of $8,184.21. Plaintiff cross-appeals from so much of the order and judgment entered thereon as allowed plaintiff to recover interest only from the date of the institution of the action rather than the dates of the occurrences or preferences which are the subject of the action.

Plaintiff is a common carrier by sea, and the defendant P. L. Thomas Paper Co., Inc. (Thomas) is a shipper of newsprint. Defendant Tidewater Forwarding Co., Inc. (Tidewater) is a forwarder which acted as agent for Thomas in negotiating for carriage of the newsprint.

Sometime about the middle of 1958 a discussion was had between officials of the defendants and one Smith, general traffic manager of Torm Lines Agency, Inc. (Torm), the agent for plaintiff, relative to obtaining a lower rate for carriage of newsprint from Portland, Maine, to Buenos Aires, Argentina. Smith thereafter notified Tidewater, agent and forwarder for defend-

ant Thomas, the shipper, that Thomas would be allowed a reduction of 10% of the total freight charge on shipments made.

In the period from September through November, 1958, seven shipments were made aboard ocean carriers operated by plaintiff on which the total earned freight charges amounted to $61,072.21. The last two shipments were made via the " *Alice Torm* " under two bills of lading dated November 7, 1958, on which the total freight amounted to $24,390.94. Bills paid on the previous shipments correctly represented the amount due without the discount and were paid in full. The 10% deduction on the total earned freight charges of $61,072.21 was deducted, at Smith's direction, from the submitted bill of $24,390.94, and the sum of $18,283.73 was paid to Torm. The freight due bill for $24,390.94, reflected $18,283.73 paid with " balance due $6,107.21 " followed thereafter by " we acknowledge to be due and payable and which we jointly and severally agree to pay within three (3) days after receipt of Bill of Lading, it being understood that Carrier's lien for freight charges is not waived and is not to be extinguished until payment of said charges." The bill listed Thomas as shipper, Tidewater as forwarder, and was signed by " J. Martone " on behalf of both. Whenever " freight prepaid " bills of lading were released on credit for ready negotiation, without the sum due actually having been paid, freight " due bills " were executed on behalf of the party to whom the bills of lading were released. That was the practice adopted here.

At the time the seven shipments were made plaintiff was a member carrier of the River Plate and Brazil Steamship Conferences, an organization of steamship lines whose agreement No. 59 authorizing the fixing of rates and practices had been filed with and approved by the United States Shipping Board in 1923, in accordance with the provisions of section 15 of the Shipping Act, 1916 (U. S. Code, tit. 46, § 814).

There was also on file with the Federal Maritime Board (successor agency to United States Shipping Board) a tariff of the conferences showing a rate of $23 per long ton as the rate of carriage for newsprint from east coast ports of the United States to Buenos Aires during the period of carriage here involved. A proper discount rate of $3 per ton allowed contract shippers is reflected in the $23 charge.

The River Plate and Brazil Conference Agreements (Conferences) dated July 1, 1923, require that freight and other charges be in accordance with the tariff of rates and charges agreed to by the parties, and prohibit " unjust discrimination against, and no discount, payment or return of any description, directly or indirectly, to any shipper ", etc., except as provided in the

tariffs and as approved by the United States Shipping Board. Thomas as shipper signed a conference freight agreement with members of the conferences. By such agreement Thomas was bound to the rates established, with a right to the benefit of any reduction in rates made by the carriers while such agreement remained effective.

On October 31, 1959, Smith's employment with Torm was terminated. In November, 1959 defendants were notified that plaintiff claimed a balance of $6,107.21 was due for the shipments made. Upon defendants' refusal to pay such sum suit was commenced against them on the theory of a breach of contract by a failure to pay the balance allegedly due.

After joinder of issue plaintiff moved for summary judgment on the grounds that no issues of fact existed sufficient to warrant a trial, and that its cause was sufficiently established by the proof submitted to warrant an award of judgment as a matter of law. The supporting papers included copies of and excerpts from the conferences, a copy of Thomas' agreement, bills of lading, due bills, including the due bill showing a balance of $6,107.21, together with affidavits in proof of the claim, and a reference to the Shipping Act of 1916, which prohibited certain discriminatory preferences. The answer of the defendants, *inter alia,* pleaded the agreement for the discount, payment, accord and satisfaction, etc., and Tidewater pleaded it acted for a disclosed principal. When plaintiff moved for summary judgment each defendant separately cross-moved for summary judgment on the grounds that no issues of fact existed and that the defense of each was sufficiently established to warrant judgment in defendants' favor as a matter of law.

Summary judgment was granted plaintiff with interest thereon from the date of the commencement of the action. Tidewater was held liable on the contract theory, and Thomas was held liable by reason of the statute, section 16 of the Shipping Act of 1916 (U. S. Code, tit. 46, § 815) which, by its terms, forbade the giving of undue or unreasonable preferences in any respect whatsoever. Both parties appeal — defendants from the judgment entered against them, and plaintiff from the failure to allow interest from 1958, the date of the transactions.

Appellant Thomas urges it was error to allow recovery against it based upon a violation of the Shipping Act because it did not obtain transportation at less than the regular rate by false billing; that it did not receive an undue rate preference; that it was further error to grant judgment on a cause of action not pleaded; the cause was outlawed by the Statute of Limitations and the court was without jurisdiction to entertain the action.

Moreover, Thomas asserts that summary judgment was improper because key facts were disputed, and the award of interest was unauthorized under the statute.

Tidewater asserts there was a triable issue as to whether it acted merely as agent for a disclosed principal, and that it was error to fail to give effect to the agreement to pay only $18,283.73.

The applicable statute then in effect specifically prohibited certain discriminatory acts by shipper, agent or forwarder of the shipper and by a common carrier by water as well. Section 16 of the Shipping Act of 1916 (U. S. Code, tit. 46, § 815) provides in pertinent part: "It shall be unlawful for any shipper * * * forwarder * * * agent or employee thereof, knowingly and willfully, directly or indirectly, by means of false billing * * * or by any other unjust or unfair device or means to obtain or attempt to obtain transportation by water for property at less than the rates or charges which would otherwise be applicable." The section then continues and declares it unlawful for any common carrier by water to give undue preference or advantage, or to allow transportation for property " at less than the regular rates or charges then established and enforced on the line of such carrier by means of false billing * * * or by any other unjust or unfair device or means."

Under the act as quoted a shipper as well as a forwarder or the agent of either is forbidden to obtain lesser rates of carriage than the established rates, when such is accomplished by false billing. Thus both may be held liable under the statute despite the disclosed agency. By the same token a carrier is forbidden to allow a preferential rate accomplished by means of a false billing.

All of the bills rendered for carriage reflected a proper and correct rate in accordance with the filed tariff of $23 per long ton. In fact, under the private agreement between the parties, a 10% discount was being allowed, the payment of which was deferred until the due bill representing the last two shipments was submitted. That bill, from which the 10% of total carriage charge was deducted, did not reflect openly that there was to be no further charge or payment. Instead the allowance was camouflaged as a balance due, with a stated promise to pay the same. The only conclusion is that there was a false billing. Obviously concealment was desirable only if such act constituted an undue preference, the revealing of which would have entitled Thomas' competitors to a like discount, or justified the lodging of a complaint by them upon refusal. This was also an " unfair

device or means '' forbidden by the statute (*Prince Line* v. *American Paper Exports*, 55 F. 2d 1053; cf. *Hohenberg Bros. Co.* v. *Federal Mar. Comm.*, 316 F. 2d 381).

Thomas' argument that it was error to allow judgment on a cause of action not pleaded is of little merit here. The papers in support of the motion for summary judgment gave notice of the statutory claim and the additional theory upon which plaintiff proceeded. Thomas' own affidavit in opposition to plaintiff's motion and in support of its own motion for summary judgment, took note of the claim of false billing, denying such billing was designed to hide any aspect of the transaction, discussed the conferences and disputed that the tariff filed by the conference was the lawful rate required to be charged. Thomas was not misled to its prejudice by the claimed variance and the court could have directed the fact to be found according to the proof or permitted the necessary amendment (Civ. Prac. Act, § 434 [in effect in 1959]; CPLR 3025). Moreover the court was entitled and even obliged to take judicial notice of the law involved (CPLR 4511). Even on appeal where convinced, as here, that no prejudice results or that the proof so warrants, this court may amend the pleadings to conform to the proof (cf. *Samios* v. *Samios*, 285 App. Div. 1020; 3 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3025.31 and cases cited). We do consider the pleadings and proof as properly invoking the applicable provisions of the Shipping Act of 1916.

Thomas urges, by reason of General Order 83 of the Federal Maritime Board, in effect at the time of the shipments, a change in rates was not prohibited. The particular regulation relied upon required every common carrier by water in foreign commerce to file schedules with the board showing rates and charges for transportation of property from the United States to foreign points. It also provided: '' § 235.2 Time for filing. Any schedule required to be filed as aforesaid, and any change, modification or cancellation of any rate, charge, rule or regulation contained in any such schedule shall be filed as aforesaid within 30 days from the date such schedule, change * * * becomes effective.'' Thomas asserts the changed rate was not a violation because such change need not have been filed in advance under the order. Obviously the provisions of that order have no application here for the changed rate was not filed in 30 days, or thereafter, and had the parties intended the protection of its coverage, there would have been no cause for concealment by the utilization of false due bills. It is not the changed rate as a favor which is forbidden, but the changed rate accompanied

by concealment or by the use of false bills (*Prince Line* v. *American Paper Exports, supra*; U. S. Code, tit. 46, § 815).

The distinguishing feature between this case and *Ambler* v. *Bloedel Donovan Lbr. Mills* (68 F. 2d 268) cited by Thomas, is that in that case there was a written contract which the court found took precedence over the bills of lading.

The court found also, there was no concealment as forbidden by the statute, "this was no rebate or refund as these terms are commonly understood" (p. 271) and no advantage was gained by the shipper for a competitor was given the same rate.

In the case before us the proof indicates that other competitors were not given the same rate. Thomas obtained the preferential rate in order to be advantaged over competitors, and the 10% discount was the source of such positive advantage.

The State courts are not excluded from jurisdiction in this field by Federal pre-emption (cf. *United States* v. *American Union Transp.*, 232 F. Supp. 700, 703; *Belmont Iron Works* v. *Pacific Coast Direct Line*, 249 App. Div. 156) nor is such expertise required for determination of the issues involved as would support Thomas' contention of the desirability of first reference to the Federal Maritime Commission (successor to the Federal Maritime Board) on the question of a statutory violation. The commission has laid down clearly defined guidelines as to discriminatory rates prohibited under section 17 of the Shipping Act (U. S. Code, tit. 46, § 816) (see *United States Lines & Gondrand Bros.* [violation of section 16], 7 F. M. C. 464), and "[i]n the language of the Shipping Act, 1916, there is nothing expressed or implied which suggests that the Commission has exclusive, primary jurisdiction over violations of 46 U. S. C. § 815" (*United States* v. *American Union Transp., supra*, p. 703).

While Special Term might properly have found both defendants liable under the statute as well as for breach of contract it did not do so. We premise the finding of liability here under the statute as to both defendants. While interest is not barred by such a finding, it appears that in shipping act violations its award is discretionary (cf. *Flota Mercante Grancolombiana* v. *Federal Mar. Comm.*, 302 F. 2d 887, 894). From the record, including the affidavit of Smith, it appears plaintiff was a satisfied and indeed a willing party to the preferential discount agreement. It should not now be allowed to profit by its own wrongdoing beyond the statutory demands.

Order and judgment appealed from should be modified on the law and in the exercise of discretion, to strike the allowance of

interest, and as so modified, otherwise affirmed, without costs or disbursements to either party.

RABIN, J. P., STEUER, CAPOZZOLI and BASTOW, JJ., concur.

Order and judgment unanimously modified, on the law and in the exercise of discretion, to strike the allowance of interest, and, as so modified, affirmed, without costs or disbursements.