UNITED STATES of America, Plaintiff,

v.

OPEN BULK CARRIERS, LTD., Union Camp Corporation, Mead Corporation, Continental Can Corp., and J. K. Ebberwein, Inc., Defendants.

Civ. A. No. CV477–193.

United States District, S. D. Georgia.

Jan. 19, 1979.

Edmund A. Booth, Jr., Asst. U. S. Atty., Augusta, Ga., Emmett B. Lewis, Admiralty & Shipping Section, Dept. of Justice, Washington, D. C., for the U. S.

Edwin D. Robb, Jr., Bouhan, Williams & Levy, Savannah, Ga., for Union Camp Corp.

Edward T. Brennan, Adams, Adams, Brennan & Gardner, Savannah, Ga., for J. K. Ebberwein, Inc.

LAWRENCE, Senior District Judge.

*Order on Government's Motion for Stay and Ebberwein's Motion to Dismiss*

On August 24, 1977, the Government filed this action for civil penalties incurred by defendants for claimed violations of the Shipping Act, 1916. 46 U.S.C. § 801 *et seq.* On April 24, 1978, the Government filed a Motion For Stay Pending Federal Maritime Commission Hearing and Investigation on the subject and for determination of the issues by the Commission instead of this Court. Argument on the motion was heard on June 30, 1978. Briefs have been filed.

### I.

The amended complaint alleges that Union Camp contracted with Open Bulk Carriers (Troll) for shipment of linerboard from Savannah to northern Europe. Union Camp guaranteed to ship a minimum annual tonnage and a minimum tonnage per sailing. As a result of this contract, Union Camp was granted lower freight rates than Troll's other tariffs. The rate provisions were filed with the Commission.

During 1972, 1973, and 1975 Union Camp was unable to meet the minimum requirements of the Agreement. It combined its shipments with those of Mead Corporation and Continental Can Corporation.[1] The combination of shipments fulfilled the requirements as to tonnage and the shipments were made at the lower rates.

The Government alleges that the combination shipments were unauthorized and that in securing same Union Camp acted as a nonvessel operating common carrier or an unregistered freight forwarder. The Government also contends that Ebberwein received compensation as a freight forwarder without performing the requisite services.

The Commission began an investigation in 1975. It was completed on June 23, 1976. The instant suit was filed more than a year later.[2] During settlement negotiations, the Government argues that issues were raised which should be initially decided by the Commission. They are: (1) whether cargo can be combined to take advantage of the lower freight rate; (2) whether the volume contracts between Union Camp and Troll were properly filed; (3) whether Ebberwein performed the activities of a freight forwarder; and (4) whether the defendants' activities constitute "unjust or unfair devices or means" within the meaning of the Shipping Act. 46 U.S.C. § 815.

In short, the Government contends that the doctrine of primary jurisdiction is applicable and that this Court should allow the Commission to determine the above issues in the interest of a uniform *National* rule rather than on the District Court bench or Circuit Court of Appeals.

Union Camp and Ebberwein oppose the motion to stay. They argue that the Commission lacks jurisdiction to hear this case; that the Government has elected its remedy and should abide by its choice of forum; that the referral to the Commission would deprive them of their right to jury trial; and that the doctrine of primary jurisdiction is inapplicable. Ebberwein also moves to dismiss, claiming that the proposed stay amounts to an abandonment of the suit by the Government.

### II.

■ (a) Defendants contend, as stated, that the Commission lacks jurisdiction to

---

1. After suit was filed, the Government settled its claims with Open Bulk Carriers, Ltd., Mead, and Continental Can and voluntarily dismissed the action as to them. Only Union Camp and J. K. Ebberwein, Inc. remain as defendants.

2. The Government's briefs candidly state that the statute of limitations would have run on the 1972 violations before the administrative investigation by the Commission could be completed. Plaintiff elected to file suit in this jurisdiction in order to toll the statute and now seek, in effect, a remand to the Commission.

resolve the allegations of the complaint. It is clear, however, that a Commission possesses the power to investigate the allegations and to determine whether a violation exists. 46 U.S.C. § 821. See *United States Navigation Co., Inc. v. Cunard Steamship Co., Ltd.*, 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408. The Commission may compromise a civil penalty or refer a violation to the Justice Department for collection of the civil penalty. Pub.L. 92–416; 46 C.F.R. § 505. See 1972 U.S. Congressional and Administrative News, p. 3121.[3]

(b) Defendants secondly contend that the Commission has made an irrevocable election of remedies. In support, they cite *Interstate Commerce Commission v. Maine Central Railroad Company*, 505 F.2d 590 (2nd Cir.), and *Civil Aeronautics Board v. Aeromatic Travel Corp.*, 489 F.2d 251 (2nd Cir.) in respect to the doctrine of primary jurisdiction. They maintain that the rule does not apply where the agency has instituted proceedings in a district court. In the cases referred to the Government brought civil actions. The defendants sought to remove the proceedings to the administrative agency. The courts denied the motions to remove on the ground that the decision of the agency to litigate was based on the agency's expertise and "can have no application where, as here, the very institution of suit in the courts by the relevant administrative body represents an exercise of its 'special competence,'" 505 F.2d at 594.[4]

In its reply brief, the Government points out that in *Maine Central* and *Aeromatic Travel* "the courts found that the matters did not require administrative expertise to resolve and that an agency order was not necessary for an injunction". Such may be true as far as it goes. However, that view of the decisions overlooks, in my opinion, an important factor. In both cases the action was instituted by the agency, and the Government opposed referral of the cases to it. The Second Circuit in effect held that filing the action constituted an exercise of the agency's expertise and that to remand would create unnecessary delay.

■ (c) The Government further asserts that the election of remedies principle is inapposite here, citing *Twin City Federal Savings and Loan Association v. Transamerica Insurance Co.*, 491 F.2d 1122 (8th Cir.). There it was held that the doctrine is designed to prevent double recovery for a single wrong. The elements of the doctrine are (1) inconsistent remedies and (2) an election of plaintiff of one of them. *Wolak v. United States*, 366 F.Supp. 1106 (D. Conn.).

The doctrine does not appear to be applicable here. The Commission can establish that the alleged violations have occurred and then bring suit to collect penalties. Or it can file suit in the district Court in the first instance.

No case has been cited, and none found, in which the Government has initiated suit on behalf of any agency and then sought to remove the case for agency review. Removal of the problems in this case to the Commission would extend the statute of limitations for agency investigation, at least as to the 1972 shipments. The agency investigated the facts underlying the alleged violations. By June, 1976, it had completed its investigations sufficiently to allege violations of the Shipping Act in its complaint filed in August, 1977.

In its Order of April 20, 1978, the Commission stated that "During the course of settlement negotiations several issues were raised that, in our opinion, warrant consideration and resolution by this Commission

---

**3.** If the Commission determines that violations occurred, any appeal would be to the Circuit Court of Appeals. 28 U.S.C. § 2342. The amount of any penalty would be compromised by the Commission or determined by a jury in this Court. P.L. 92–416. See *United States v. Anchor Line, Ltd.*, 257 F.Supp. 99 (S.D., N.Y.).

**4.** In *Far East Conference v. United States*, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576, the Supreme Court ruled that a case brought by the Government should have been ruled on initially by the Federal Maritime Board. There, however, suit had not been initiated by the Board. It was brought to enforce the Sherman Act, not the Shipping Act, and the Board had joined in defendant's motion to remand to the Board.

in its capacity as the agency with particular expertise in matters arising under the Act." Comparison of the Order referred to and the complaint reveals no new issues or facts. The Commission completed its investigation, as stated above, in 1976. Predicated on its prior investigation, it filed this suit over a year later.[5]

■ While the doctrine of election of remedies is not applicable, the rationale of *Maine Central* and *Aeromatic Travel* is persuasive. When the Commission filed suit through the Justice Department, the filing represented a determination that possible violations of the Shipping Act existed. Such constitutes an exercise of agency discretion and expertise. When settlement fails, the agency is not entitled to stay the proceedings and renew its investigations.

### III.

■ Defendants contend that the doctrine of primary jurisdiction does not apply under the facts of this case. That rule governs "where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim, required the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126; L. L. Jaffe, 77 *Harvard Law Review*, 1037; 3 K. C. Davis, *Administrative Law Treatise* § 19.01 at 5 (1958); Von Bom Baur, 1 *Federal Administrative Law* §§ 213–225 (1942).

■ Uniformity of the regulatory scheme and expertise of the administering agency are the governing reasons for the primary jurisdiction doctrine. *Texas and Pacific Railway Company v. Abilene Cotton Oil Company*, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553; *Far East Conference v. United States, supra*, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576. The so-called doctrine is not relevant where the issues "are within the conventional competence of the courts, and the judgment of a technically expert body is not likely to be helpful." *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 305–06, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643.

The Government has charged Union Camp with four violations of 46 U.S.C. § 815.[6] It alleges that the combination of cargo from different shippers was a violation of the Shipping Act. See paragraphs 9, 11, and 12 of the complaint; issues 1 and 2, F.M.C. Order.

■ The predominant issue is whether Troll's tariff, filed with the Commission, permits the combining of cargo of two or more owners to achieve the minimum quantity.[7] The Government contends that the Commission should interpret the tariff. See generally *United States v. Western Pa-*

---

**5.** At oral argument, counsel for the Government conceded that "Everything that is at issue is at issue by virtue of the complaint." However, he went on to explain that, during negotiations, "There were a number of arguments that were made that frankly had not been considered and were considered provocative by the General Counsel's office. And the General Counsel's office felt that in view of the questions presented and the arguments presented that there was some basic policy questions raised by this conduct which would have a nationwide impact on the shipping policy in this country and the regulatory scheme of the Federal Maritime Commission and that there was a need to have these issues resolved in a forum that would have uniform application throughout the country. And they thought it would be in the public interest to have the hearing at the Commission. It was for that reason that when the compromise discussions broke down as to these two defendants the Commission was presented the question, and the Commission entered an order for the hearing."

**6.** That section provides that "It shall be unlawful for any shipper . . . knowingly and willfully . . . by any other unjust or unfair device or means to obtain or attempt to obtain transportation by water" at less than applicable rates.

**7.** The 1972 agreement provided for "Minimum 60,000 tons for shipment January 1, 1972 through December 31, 1972, tendered in combined quantities of approximately 5,000 tons per sailing."

cific Railroad Co., supra; Texas and Pacific Railway Company v. American Tie & Timber Co., Ltd., 234 U.S. 138, 34 S.Ct. 885, 58 L.Ed. 1255. It claims that there are "technical matters of fact and important policy and regulatory considerations concerning the shipping industry [which are] peculiarly addressed to the expertise of the Commission."

The Supreme Court has said that "there would be no need to refer the matter of construction to the Commission if that body, in prior releases or opinions, has already construed the particular tariff at issue or has clarified the factors underlying it." United States v. Western Pacific Railroad Co., supra, 352 U.S. at 69, 77 S.Ct. at 168. Actual ownership of goods is, apparently, irrelevant in determining the applicable rate. "The contention that a carrier when goods are tendered to him for transportation can make the mere ownership of the goods the test of the duty to carry, or, what is equivalent, may discriminate in fixing the charges for carriage, not upon any difference inhering in the goods or in the cost of the service rendered in transporting them, but upon the mere circumstance that the shipper is or is not the real owner of the goods is so in conflict with the obvious and elementary duty resting upon a carrier, and so destructive of the rights of shippers as to demonstrate the unsoundness of the proposition by its mere statement." Interstate Commerce Commission v. Delaware, Lackawanna & Western Railroad Company, 220 U.S. 235, 252, 31 S.Ct. 392, 398, 55 L.Ed. 448. See also Couzens Warehouse & Distributors, Inc. v. Fred Olson Motor Service Co., 544 F.2d 919 (7th Cir.).

The second violation of § 815 charged is that combination of cargo and subsequent failure to pay the applicable rates are unfair or unjust devices or means. See paragraphs 9, 11, and 12 of the Complaint; issues 7 and 9 of the F.M.C. Order. In Unit-

ed States v. American Union Transport, Inc., 232 F.Supp. 700 (D.N.J.), the defendants who were charged with violations of 46 U.S.C. § 815 urged that primary jurisdiction was in the Federal Maritime Commission to determine whether their activities were "unjust or unfair." The Court held that "the determination of whether the alleged conduct, if proven to have occurred, comes within the general language of § 815 is a simple question of law—the interpretation of the intent of the statute—and, on this question the experience of the Commission is irrelevant. It is no more able or expert in interpreting the meaning and intent of § 815 than would be a Court." 232 F.Supp. at 704.

The third violation grows out of Union Camp's alleged refusal to pay deficient tonnage penalties. See paragraphs 28 and 29 of the Complaint; issue 8 of the F.M.C. Order. Resolution of such a charge would seem to require little more than a determination of whether Union Camp met the minimum requirements and, if it did not, whether it paid the requisite deficiency penalties. Such does not seem to be beyond the competence of this Court. See Nader v. Allegheny Airlines, Inc., supra, 426 U.S. at 305, 96 S.Ct. 1978.[8]

Finally, the Government raises the question of whether the alleged activities resulted in competitive harm and whether such is necessary for a violation of § 815. See paragraphs 8, 11, & 12 of the Complaint; issue 10 of the F.M.C. Order. Again, the question presents merely a matter of statutory interpretation, a typically judicial question.

The Government also alleges that Union Camp operated as either an unregistered non-vessel operating common carrier (NVOCC) or an unlicensed freight forwarder in violation of § 817(b) or § 841a. See paragraph 20 of the Complaint; issue 3 of the F.M.C. Order. "The Commission, with

---

**8.** "The sole issues here are the construction of defendant's tariff and the determination of whether defendant complied with its mandate."

United States v. Pan American Mail Line, Inc., 359 F.Supp. 728, 732 (S.D., N.Y.).

its knowledge of the industry," argues the Government, "is in a unique position to examine Union Camp's practices and the extent to which such practices should be regulated." However, in *United States v. Stephen Brothers Line*, 384 F.2d 118 (5th Cir.), the Government asked the court to determine "whether the carrier's activity was that of a common carrier by water." Additionally, the F.M.C. has stated that a shipper is not an NVOCC unless it holds itself out to the shipping public as such. *Puget Sound Tug & Barge Co. v. Foss Launch & Tug Co.*, 7 FMC 43.[9] The question of whether Union Camp acted as a freight forwarder is similarly a matter of statutory interpretation. See 46 U.S.C. § 801.

The last charge against Union Camp is that it failed to file the preferential freight agreement. See paragraphs 8 and 16 of the Complaint; issue 4 of the F.M.C. Order. The Government concedes that the "major provisions of the volume contract [were] embodied in Troll's tariff." The issues are whether the volume contract should have been filed and whether substantial compliance is sufficient under § 814. The F.M.C. has ruled, however, that a volume contract is not subject to § 814 filing but is subject to the unjust discrimination provisions of § 812. See *American Export Isbrandtsen Lines, Inc. v. Federal Maritime Commission*, 127 U.S.App.D.C. 62, 380 F.2d 609, 618–19.

The Government charges Ebberwein with two violations of the Shipping Act. First, it alleges that Ebberwein received compensation as a forwarder without providing the services required by 46 U.S.C. § 841b(e).[10] See paragraphs 11 and 16 of the Complaint;

issue 5 of the F.M.C. Order. Second, it argues that Ebberwein violated the Commission's regulations by failing to disclose the "actual shipper" on various bills of lading. 46 C.F.R. 510.24(a). See paragraphs 11 and 18 of the Complaint; issue 6 of the F.M.C. Order.

Such inquiries are not beyond "the conventional experience of judges." See *Far East Conference v. United States, supra*, 342 U.S. at 574, 72 S.Ct. 492. The issues in the present case do not require mastery of the arcane or esoteric or a journey to Delphi.

## IV.

Primary jurisdiction of the Commission exists "where a rate, rule or practice is attacked as unreasonable or as unjustly discriminatory, and also where it is necessary, in the construction of a tariff, to determine upon evidence the peculiar meaning of words or the existence of incidents alleged to be attached by usage to the transaction. In all such cases the uniformity which it is the purpose of the Commerce Act to secure could not be obtained without a preliminary determination by the commission." *United States Navigation Co., Inc. v. Cunard Steamship Co., Ltd., supra*, 284 U.S. at 482, 52 S.Ct. at 249.

However, "the attainment of uniformity does not require that in every case where the construction of a tariff is in dispute, there shall be a preliminary resort to the Commission." *Great Northern Railway Company v. Merchants Elevator Company*, 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943. In that case the Supreme Court held that where "no fact, evidential or ultimate,

---

**9.** "There are many ways to say it, but none is better than the familiar one that 'the distinctive characteristic of a common carrier is that he undertakes to carry for all people indifferently.'" *Semon v. Royal Indemnity Co.*, 279 F.2d 737, 739 (5th Cir.).

**10.** To be compensated, a licensed forwarder must have performed "the solicitation and securing of the cargo for the ship or the booking of, or otherwise arranging for space for, such

cargo." In addition, the forwarder must perform at least two of the following: "(1) The coordination of the movement of the cargo to shipside; (2) The preparation and processing of the ocean bill of lading; (3) The preparation and processing of dock receipts or delivery orders; (4) The preparation and processing of consular documents or export declarations; (5) The payment of the ocean freight charges on such shipments." § 841b(e)

is in controversy; and there is no occasion for the exercise of administrative discretion," preliminary resort to the Commission is not required. 259 U.S. at 294, 42 S.Ct. at 480.

The Government selected the Southern District of Georgia as the place to litigate the identical question that had arisen before the Commission. The election is in itself highly suggestive that this Court has coordinate jurisdiction over the subject-matter.

The plaintiff now wishes to transfer the case to the Commission. Bringing the suit in the Southern District appears to have been for the purpose of tolling the statute of limitations. This Court is a forum and not a shopping center for litigants.

It is true that a decision by the Commission would be nationwide in its reach rather than district-wide. But that factor is overweighed by others. Further, if the Government disagrees with my ruling, it can appeal to the Court of Appeals for the Fifth Circuit.

Militating against a transfer of the case to the Commission is the fact that the defendants will be spared the considerable expense of litigating before a bureau 600 miles from the place where the alleged violations occurred. Savannah is the residence of Ebberwein. The site of a principal office of Union Camp is here. The pertinent records are here.

For these reasons the motion by the Government to stay the proceedings in this Court is denied.

## V.

■ Ebberwein has moved to dismiss the complaint for want of prosecution. His counsel argues that the Government's motion to stay constitutes an abandonment by the plaintiff of its action. There is no merit in this contention. Comprehension of the basis of it like "the peace of God . . . passeth all understanding."

Defendant's motion to dismiss is denied.

## VI.

■ Defendants demand a jury trial. The Government contends that issues involving a regulatory scheme should not be decided by a jury. See *Mitchell Coal Company v. Pennsylvania Railroad*, 230 U.S. 247, 255, 33 S.Ct. 916, 57 L.Ed. 1472; *Loomis v. Lehigh Valley Railroad Co.*, 240 U.S. 43, 49, 36 S.Ct. 228, 60 L.Ed. 517. As I view this case, few, if any, material factual issues are in dispute. The issues to be decided are questions of law, that is, construction of the applicable tariff and statutes, and are matters for this Court, not a jury. If I should determine that violations occurred, the amount of the penalty constitutes a question which the jury must decide. See *United States v. J. B. Williams Company, Inc.*, 498 F.2d 414 (2nd Cir.); *United States v. Regan*, 232 U.S. 37, 34 S.Ct. 213, 58 L.Ed. 494.

## VII.

### *Discovery*

Under Rule 7 of the Local Rules of the Southern District of Georgia, discovery should be completed within four months after the filing of the answer unless the time is extended by the Court. I will not grant any extension for that purpose. Nor will any motion for summary judgment be entertained by this Court.

Discovery will be limited to the submission by the Government to the defendants of requests for admission of facts. I do not foresee any dispute in that regard from what has been observed from the record up to this point.

Upon the filing of the admissions, the case should be ready for decision upon appropriate motions of the parties.

The following time table and deadlines are established for further proceedings herein.

(a) By February 23rd next the Government will present proposed Findings of Fact (no Conclusions of Law). Simulta-

neously therewith, it will file a motion requesting admission, by the defendants, of such findings under Rule 36.

(b) On or before March 5th any objections thereto shall be interposed by the defendants.

(c) No motions are now pending upon this Court. Appropriate motions in the light of the findings and admissions will be filed by the parties (or by a party) on or before March 15th and will be accompanied by briefs. The matter of reply briefs will rest in the Court's discretion.

This Court will thereupon proceed to decision on the legal questions.

Judgment in accordance with this Order will be entered.