OPINION OF THE COURT
Edward J. Greenfield, J.
Plaintiff moves to dismiss defendant’s affirmative defenses and for summary judgment on its complaint. Defendant cross-moves for summary judgment.
Plaintiff, an executive search consultant, alleges that on November 17,1979, it entered into a written contract with George E. Smith (Smith) whereby it agreed to use its best efforts to contact various companies in Smith’s general line of work and to secure for him a favorable employment *283 contract. The agreement required Smith to pay a $9,000 fee which would be returned to Smith when plaintiff was paid a 30% finder’s fee from Smith’s new employer.
On April 2, 1980, plaintiff contacted defendant advising it of the availability of a client for possible employment. Mr. Smith’s general background and achievements were revealed but not his name. On June 2,1980, an assistant to the president of defendant called plaintiff and indicated defendant’s interest. It is averred that it was only after explanation that plaintiff expected a finder’s fee equal to 30% of the first year’s annual compensation paid and the acceptance of the fee arrangement was Smith’s name revealed. On August 7, 1980, plaintiff wrote to the assistant to the president of defendant and reiterated its fee arrangement.
On November 19,1980, defendant and Smith executed a written employment agreement which provided that Smith was to be employed starting January 1, 1981 and was to receive a first year’s salary of $100,000 plus bonus dependent on the company’s profits. On December 30, 1980, plaintiff sent defendant a statement asking for $30,000 for its partial placement fee on the $100,000 salary, and on February 11, 1981 plaintiff sent a second bill for this amount. When payment was not thereafter received, plaintiff called defendant to inquire about payment. On February 28,1981, defendant’s president wrote plaintiff denying that defendant had ever agreed to compensate plaintiff for Smith’s placement.
Plaintiff then commenced this action seeking $30,000 for breach of contract and an accounting under the first cause of action and $30,000 on an account stated under the second cause of action.
Defendant answered denying the material allegations of the complaint and asserting three affirmative defenses: first, that the complaint fails to state a cause of action; second, that the agreement is void under the Statute of Frauds (General Obligations Law, § 5-701); and third, that plaintiff is not entitled to a fee as it is not licensed as an employment agency pursuant to article 11 of the General Business Law. Each of these defenses will be discussed seriatim.
*284 It is clear that the complaint spells out claims for breach of contract (under the first cause of action) and for an account stated (under the second cause of action). On their face, either would support a judgment for the relief sought.
Defendant does not set forth under which subdivision of section 5-701 of the General Obligations Law it is proceeding. However, it is apparent that the only subdivision that could have any application {Hunt Personnel v Hemingway Transp., 105 Misc 2d 626; Winston Personnel Agency v Abcon Inds., 108 Misc 2d 695) is section 5-701 (subd a, par 1) of the General Obligations Law which provides in pertinent part that every agreement is void, unless it or some note or memorandum thereof is in writing, and subscribed by the party to be charged if by its terms it is not to be performed within one year from its making or before the end of a lifetime.
The essence of defendant’s argument here is that the alleged agreement between plaintiff and defendant with respect to the fee was made in the telephone call between plaintiff’s program director and the assistant to the president of defendant on June 2,1980. The fee allegedly agreed to was 30% of Smith’s total compensation for the first year of his employment, but the contract of employment between Smith and defendant provided that Smith was not to commence his duties until January 1, 1981. Thus, it is argued that since the parties could not know what the exact figure of Smith’s total compensation would be until more than one year after June 2, 1980, it would have to be in writing.
Defendant misapprehends the nature of the contract alleged between it and the plaintiff. Under the terms of the contract as alleged by plaintiff, plaintiff revealed the name and curriculum vitae of a prospective top-level executive to defendant in return for defendant’s promise to pay the agreed upon fee if and when it actually hired the named executive (Smith). Under their alleged agreement, plaintiff fully performed when it revealed the name and defendant’s obligation to pay accrued when it hired Smith. Certainly, these acts were capable of being performed, and, in fact, were performed within one year. Thus with respect to that portion of the fee allocable to Smith’s annual salary, *285 the fact that computation of the amount of the fee might take additional time is of no moment; it is a ministerial act. Defendant’s obligation, if there was an agreement, became fixed when it signed the employment contract with Smith.
Defendant contends, however, that the bonus portion of Smith’s annual compensation for which a fee is sought may not be calculated within one year. The bonus portion of Smith’s compensation calls for him to receive as a bonus a percentage of the net income before taxes of any business in which defendant acquires a controlling interest and which Smith brought to defendant’s attention. The bonus was to be computed on a calendar year basis. Defendant, therefore, contends that as the bonus could not be calculated until early 1982, the entire agreement must be considered indivisible and in violation of the Statute of Frauds.
Defendant cites two appellate decisions as supporting this proposition. These cases are not controlling. In Raymon Babtkis Assoc. v Tarazi Realty Corp. (34 AD2d 754) the court dismissed a complaint as violative of the Statute of Frauds, where plaintiff, a real estate broker, had secured a tenant for defendant’s premises on a 21-year lease. The broker alleged that the oral agreement provided that he was to receive a commission at the end of each year at the then real estate board’s recommended rate for the entire 21-year period. Payment of the commission was to accrue at the end of each year. There was a requirement under that contract that there be performance each year for 21 years, unlike the situation here where the obligation became payable within one year.
In Briefstein v Rotondo Constr. Corp. (8 AD2d 349), the oral employment agreement provided that plaintiff was to receive 25% of the profits at the end of the year. Under normal accounting methods, profits could not, and would not, be computed until after the one-year period and the profit sharing was not limited to one year. Further, the percentage was to be paid at the termination of employment. Hence, as the obligation could run well beyond one year, the complaint was dismissed as violative of the Statute of Frauds.
*286 In this case, defendant’s alleged obligation to pay plaintiff for finding a suitable executive became fixed when defendant agreed to hire him, and plaintiff in fact billed defendant for $30,000 before Smith ever started to work. The fact that the amount of any additional bonus would not be ascertainable should not defeat plaintiff’s right to recover the $30,000 base it says had been agreed to. Further, in this case, the amount of Smith’s bonuses was directly dependent upon Smith’s own activities. Thus, if Smith did not succeed in acquiring new companies, upon which the bonus was based, he would not have been entitled to any bonus, and if he died or left defendant’s employ, his salary would be computed to the date of his termination. Accordingly, the underlying contract was capable of being fully performed and fully computed within one year. The calculation of the amount of the fee was similarly capable of being done within one year of being made (Polykoff Adv. v Houbigant, Inc., 43 NY2d 921).
Defendant’s third affirmative defense asserts that plaintiff failed to comply with article 11 of the General Business Law and therefore is not entitled to collect fees. Section 172 of the General Business Law requires that “[n]o person shall open, keep, maintain, own, operate or carry on any employment agency unless such person shall have first procured a license”. Plaintiff admits that it is an employment agency (General Business Law, § 171, subd 2), but asserts that the General Business Law provisions do not apply to it because it is based out of State. Section 170 of the General Business Law provides that the entirety of article 11, dealing with the regulation of employment agencies, applies only to employment agencies in the State.
Plaintiff asserts that it is an executive search consultant maintaining its sole offices in Washington, D. C., where it is incorporated. Plaintiff avers that it has approximately 20 “information offices” throughout the United States, including one in New York County. These local offices are wholly owned and operated by franchisees whose sole function is allegedly to secure prospective clients for plaintiff through advertising and to advise them of the services offered by plaintiff. The local office screens prospective clients to determine eligibility prior to their referral to the *287 Washington, D. C., office. Upon referral, the franchisee is paid a commission. Referral to the Washington, D. C., office entails a full day of in-depth interviews and the execution of a contract. The execution of the contract and all plaintiff’s services are performed in Washington, D. C.
Plaintiff contends that it is a licensed employment agency in Washington, D. C., and has fully complied with the Washington, D. C., Code (tit 47, ch 30, § 47-3001 et seq.).
Defendant, on the other hand, contends that plaintiff in fact conducts and maintains operations as an employment agency in this State and therefore is subject to the licensing requirement of article 11 of the General Business Law. Defendant points to a brochure obtained from defendant’s local office in New York County. The brochure has only defendant’s name, and lists Washington, D. C., as its world headquarters; but it also lists other “local offices” where “an introductory interview can be conducted at a location convenient to you.” The brochure explains that the prospective client will be interviewed locally by a regional director and if he believes that the prospective client qualifies for plaintiff’s program, arrangements are made for an in-depth interview in Washington, D. C. The brochure then specifically states that “all individuals must be personally interviewed in Washington, D.C., before they may be accepted as clients.”
It is clear, under these facts and circumstances, that plaintiff’s activities in this State constitute a material portion of its over-all operation in obtaining employment opportunities for its clients. Its “local office” in New York provides more than information to prospective clients — it interviews and screens applicants as a first step in a procedure designed by plaintiff (see General Business Law, § 171, subd 2, par a, cl [i]; subd 2, par c; subd 5). It matters not that local offices are privately or independently owned and operated, since they are demonstrably held out to the general public as being a part of plaintiff and perform an employment agency function (People v Davan Executive Servs., 97 Misc 2d 437, 439) in this State. Plaintiff cannot insulate itself from local laws by conducting interviews in a distant jurisdiction.
*288 While exemption is provided for agencies who place employees in positions paying $20,000 a year or more provided no fee is charged to the employee (General Business Law, § 17, subd 2, par e), that exemption does not apply here where, concededly, the agency charged the employee $9,000, even though it was to be refunded when the employer made payment.
The plaintiff is, therefore, governed by article 11 of the General Business Law. However, it does not follow that because plaintiff was unlicensed, it may not collect a fee from defendant. As noted above, section 172 of the General Business Law provides that “No person shall * * * operate * * * any employment agency unless such person shall have first procured a license therefor”. Section 190 of the General Business Law provides that persons who violate section 172 of the General Business Law shall be guilty of a misdemeanor and upon conviction shall be subject to fine of up to $1,000 and imprisonment of up to one year or both.
“If [a] statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy or appropriate individual punishment, the right to recover will not be denied” (Rosasco Creameries v Cohen, 276 NY 274, 278; Fosdick v Investors Syndicate, 266 NY 130; Merchants’ Line v Baltimore & Ohio R. R. Co., 222 NY 344; Mahar v Harrington Park Villa Sites, 204 NY 334; cf. Carmine v Murphy, 285 NY 413).
Article 11 of the General Business Law does not compel the conclusion that every agreement entered into by an unlicensed employment agency be voidable or unenforceable. In a suit between an employment agency and its client, the prospective employee, it is appropriate that the agreement be unenforceable because the client, as a member of the public, is a part of the very class of persons intended to be protected by the licensing statute. “The legislature had the right to take notice of the fact that such agencies are places where emigrants and ignorant people frequently resort to obtain employment and to procure information. The relations of a person so consulting an agency of this character with the managers or persons *289 conducting it are such as to afford great opportunities for fraud and oppression, and the statute in question was for the purpose of preventing such fraud, and probably, for the suppression of immorality.” (People ex rel. Armstrong v Warden, 183 NY 223, 227.)
The protection afforded by the statute for the benefit of individuals seeking work does not enure to the benefit of corporations which have accepted a person for placement. Whether the provider of the service was licensed or not was immaterial to them in this specific transaction, except as a device to avoid its obligation. (Atkin v Hill, Darlington & Grimm, 15 AD2d 362, 366-367, affd 12 NY2d 940.)
Two of the cases cited by the defendant in support of the proposition that courts will always refuse to enforce agreements made by unlicensed employment agencies did not cover disputes between agencies and employers. Russell-Stewart, Inc. v Birkett (24 Misc 2d 528, app dsmd 12 AD2d 757) was a Special Term case in which a fashion model who had an exclusive three-year contract with plaintiff model agency repudiated the contract and went with another agency. Plaintiff sued her for damages and an injunction. The court barred plaintiff from the recovery not only because the plaintiff was unlicensed but called for unlawful fees and provided that it was to receive a commission whether or not it procured the employment.
Friedkin v Harry Walker, Inc. (90 Misc 2d 680) was a Civil Court action in which an individual sought return of commissions from the defendant booking agency on the ground that defendant was a de facto employment agency which had to be licensed under section 171 of the General Business Law. Under those circumstances, the contract between the agency and the individual was held to be unenforceable, requiring the return of fees theretofore paid.
In Dorrell Assoc. v Urb Prods. Corp. (67 Misc 2d 716), the Civil Court did have a dispute between an executive placement firm and a corporation for which the agency had found an employee. The agency concededly had no license. The right of the agency to recover compensation from the corporate employer was barred. I cannot agree with the conclusions and result of that case. It is to be noted that the *290 statute exempts from regulations those executive placement firms which take no fee from the employee. Why? Obviously, because under those circumstances, the rights of the employee are not involved and the licensing has no bearing on the right of the agency to recover from an employer. In that case the executive had been charged $21.41 by the agency for disbursements. It is anomalous that under the construction here urged, a statute concededly designed for the benefit of employees would, if construed as defendant argues, result in a significant penalty to the employee supposedly to be protected. If the agency has a right to proceed against the employer, the $9,000 fee paid by the employee will be refunded. If not, the employee will be “protected” from the unlicensed agency by paying out-of-pocket $9,000. Hence, I cannot accept the reasoning of Judge Irving Younger in thes Dorrell case.
While the statute here provides that all employment agencies shall be duly licensed and imposes penalties by way of fine and imprisonment for failure to comply, it does not follow that all agreements made by unlicensed agencies are unenforceable. “Nothing in the statute reveals an implied intent to deprive unlicensed dealers of the right to recover * * * and where the wrong committed by the violation of the statute is merely malum prohibitum, and does not endanger health or morals, such additional punishment should not be imposed unless the legislative intent is expressed or appears by clear implication” (Rosasco Creameries v Cohen, 276 NY 274, 280, supra).
Accordingly, plaintiff’s motion to dismiss defendant’s affirmative defenses is granted and defendant’s motion for summary judgment is denied. That portion of plaintiff’s motion which seeks summary judgment is also denied. On the record here presented, issues of fact exist including whether defendant agreed to the payment of the commission as alleged and whether the secretary to defendant’s president had actual or apparent authority to enter into such an agreement.