JOHN WILLIAM COSTELLO ASSOCIATES, INC., Respondent, v STANDARD METALS CORPORATION, Appellant.

First Department, February 21, 1984

**APPEARANCES OF COUNSEL**

*Yvette Harmon* of counsel (*Mark Cahaney* with her on the brief; *Windels, Marx, Davies & Ives,* attorneys), for appellant.

*Donald West* for respondent.

**OPINION OF THE COURT**

MURPHY, P. J.

In the first cause of action, plaintiff seeks to recover damages under an oral agreement made with the defendant on or about June 2, 1980. Essentially, plaintiff alleged that it revealed the name and qualifications of one George E. Smith to the defendant with the understanding that it would receive 30% of Smith's total compensation for the first year of his employment if defendant employed him.

Plaintiff further alleged that the defendant entered into a written agreement with Smith on or about November 19, 1980. Under that written agreement, Smith was to commence employment on January 1, 1981. He was to receive a base compensation of $100,000 for the first year plus bonuses based on various contingencies set forth in the written employment agreement. For defendant's purported breach of the oral agreement, plaintiff sought $30,000 in immediate damages and 30% of any additional income that Smith might receive for the first year of employment. The second cause seeks identical damages upon the theory of account stated.

The first affirmative defense alleges that the complaint does not set forth a claim upon which relief could be granted. In the second affirmative defense, the defendant asserts that the oral agreement was void under section 5-701 (subd a, par 1) of the General Obligations Law. Basically, the defendant contended that the oral agreement could not be performed within a year because Smith's total compensation for the first year could not be calculated within a year. Hence, plaintiff's commission of 30% could not be calculated within a year. In its third affirmative defense, defendant alleges that the plaintiff could not recover because it had violated the licensing provisions for an employment agency as mandated by article 11 of the General Business Law.

Plaintiff moved pursuant to CPLR 3211 (subd [b]) and 3212 for an order striking the affirmative defenses and granting it summary judgment. The defendant cross-moved for summary judgment. Special Term (121 Misc 2d 282) found that the oral agreement was performable within a year. It also found that the plaintiff had violated the licensing provisions of article 11 but that it was still entitled to recover a commission. Thus, the court struck the second and third affirmative defenses. However, it denied summary judgment to both sides since issues of fact were presented as to whether (i) the defendant agreed to the payment of the commission and (ii) the secretary to defendant's president had actual or apparent authority to enter into such an agreement.

While I agree with Special Term that the second and third affirmative defenses should be dismissed, I would go

further and grant summary judgment to plaintiff upon the first cause on the issue of liability. The matter should then be remanded for an assessment of damages.

Before analyzing the record, three operative principles should be reaffirmed. First, facts appearing in the movant's papers, which the opposing party does not controvert, may be deemed to be admitted (*Kuehne & Nagel v Baiden,* 36 NY2d 539, 544). Second, summary judgment may be awarded to the movant on an unpleaded cause of action if the proof supports such cause and if the opposing party has not been misled to its prejudice (*Dampskibsselskabet v Thomas Paper Co.,* 26 AD2d 347, 352). Third, summary judgment searches the record and may be given to the nonappealing party (*Jim, Jack & Joe Realty Corp. v Rothenburg,* 78 AD2d 634, 635).

Edward Nottage, plaintiff's program director, submitted an affidavit in support of plaintiff's motion for summary judgment. He averred that, on April 2, 1980, he wrote the defendant's president, Boris Gresov, to advise him of the availability of a client for possible employment with his company. Nottage further stated that, on June 2, 1980, he was telephoned by Gresov's assistant, Mary Di Rienzo. He allegedly informed Di Rienzo that plaintiff's fee would be equal to 30% of his client's compensation during the first year of his employment by the defendant. Nottage continued by stating that he revealed Smith's identity after Di Rienzo had assured him that she understood and accepted the fee arrangement. In a letter dated June 10, 1980, Nottage offered to arrange a telephone interview between Smith and Di Rienzo. He then turned the file over to Andrew Jank, plaintiff's marketing director.

Jank submitted his own affidavit in support of the plaintiff's motion for summary judgment. He alleged that, on August 6, 1980, he telephoned Di Rienzo to renew her interest in Smith. During that call, Jank set up a telephone interview between Smith and Gresov. At that time, he again reiterated plaintiff's fee requirements, and he was assured by Di Rienzo that she understood and agreed to those requirements. The following day, Jank sent a letter to Di Rienzo. This letter, appearing in the record, reads as follows:

"Dear Ms. DiRienzo:

"We are pleased of your expressed interest in our client, Mr. George Smith. We trust that discussions between your firm and Mr. Smith will be meaningful and productive.

"In the event than [sic] an employment agreement is consummated with George Smith, fees for our services are computed at 30% of the first year's total compensation. If you have any need for further information about our services, or if I can be helpful to you in any way, please call me at (202) 331-1900.

"Sincerely,

"ANDREW JANK

"Marketing Director"

Jank stated that, from August 7, 1980 until December 5, 1980, he worked closely with Smith and was in contact with Di Rienzo during the course of the negotiations. On December 15, 1980, Jank received from Smith a copy of the employment agreement that had been executed on November 19, 1980. Plaintiff sent invoices for payment on or about December 30, 1980 and February 28, 1981, but payment was not made. In a letter, dated February 28, 1981, Gresov denied that the defendant ever had an agreement to pay plaintiff a fee for Smith's placement.

Mary Di Rienzo submitted an affidavit in opposition to the motion in chief and in support of the cross motion. To the extent here relevant, Di Rienzo's affidavit states:

"As Costello admits, Standard Metals never entered into any written agreement with Costello, nor did it sign any writing or memorandum agreeing to those terms.

"3. In papers in support of its motion, Costello alleges that I agreed on behalf of Standard Metals orally to the agreement described in paragraph 2 (Nottage and Yank [sic] affidavits). I emphatically state under oath that I never told Mr. Nottage or Mr. Jank, or indeed anyone affiliated with Costello, that Standard Metals would agree to the terms alleged in the complaint. I never discussed the terms of any alleged agreement between Costello and

Standard Metals and I never acquiesced to any such agreement.

"4. Furthermore, I have no authority whatsoever to bind Standard Metals to any such alleged agreement."

Di Rienzo's affidavit is particularly noteworthy because she does not deny that she received Jank's letter of August 7, 1980. Likewise, she does not deny that plaintiff was solely responsible for bringing Smith to the defendant's attention. The record does not contain any affidavit from Gresov. Upon this state of the evidence, the defendant must be deemed to have admitted that (i) it was fully aware of the terms in the August 7, 1980 letter when Smith was hired and (ii) Smith's hiring was directly attributable to the services provided by plaintiff.

An offer may be accepted by conduct or acquiescence (*Joseph v Atlantic Basin Iron Works,* 132 NYS2d 671, 673, affd 285 App Div 1147; *Josephine & Anthony Corp. v Horwitz,* 58 AD2d 643; *Chase Manhattan Bank v Hobbs,* 94 Misc 2d 780; see, generally, 21 NY Jur 2d, Contracts, §§ 49-51). Putting aside any factual issue as to whether the parties reached an oral agreement on June 2, 1980, it is clear that Jank's letter of August 7, 1980 constituted a written offer to the defendant. The defendant never rejected that letter. Instead, the defendant accepted the benefits of the plaintiff's services. By this conduct, the defendant assented to the terms set forth in the letter of August 7, 1980. The affirmative defense based upon the Statute of Frauds is without merit since the defendant is bound by the terms of the August 7, 1980 letter agreement. As set forth in that letter agreement, plaintiff's fee should be computed at 30% of Smith's total compensation for the first year's employment with the defendant.

Accordingly, the first cause should be deemed amended and plaintiff should be given summary judgment upon its written agreement with the defendant and the order of the Supreme Court, New York County (GREENFIELD, J.), entered January 26, 1983, which dismissed the second and third affirmative defenses but otherwise denied the motion and cross motion for summary judgment, should be modified, on the law, by granting summary judgment to plaintiff on the issue of liability on the first cause, and remand-

ing the matter for an assessment of damages, and as modified, the order should be affirmed, with costs to plaintiff.

ALEXANDER, J. (dissenting). I would modify the order below to reinstate the affirmative defense of Statute of Frauds and grant the defendant's motion for summary judgment. In my view, both Special Term and the majority incorrectly analyze the record in this case and misperceive the proper application of the Statute of Frauds.

Plaintiff John William Costello Associates, Inc. (Costello), seeks to recover commissions allegedly due under an oral agreement with the defendant Standard, whereby Standard is said to have agreed to pay a fee of 30% of the total first year's compensation paid to George Smith (Smith) should Standard decide to hire Smith.

Costello, an executive search firm and employment agency based in Washington, D.C., enlisted Smith in its career development and consultant search program for a six-month period. They charged Smith a service charge of $9,000 which would be refunded, if and when his new employer, with whom Costello succeeded in placing him, paid Costello a finder's fee.

In a letter dated April 2, 1980, Costello offered to introduce Standard to one of their clients as a potential employee whom they believed would be a key addition to Standard's senior executive staff. Costello alleges that in response to that letter, Mary Di Rienzo, assistant to Standard's chairman of the board, telephoned Edward Nottage, Costello's program director on June 2, 1980, and expressed interest in the offer.

After some discussion as to the fee that Costello would charge should Standard employ the client, it is alleged that an agreement was reached with Di Rienzo for Standard to pay a fee of 30% of Smith's compensation during the first year of his employment. Nottage then revealed George E. Smith's name to Standard and followed up this conversation with a letter dated June 10, 1980, giving Standard additional information as to Smith's experience and achievements.

Smith thereafter entered into discussions with Standard concerning his possible employment. On August 7, 1980,

Andrew Jank, Costello's marketing director, wrote to Di Rienzo, stating that in the event an employment agreement was consummated with Smith "fees for our services are computed at 30% of the *first year's total compensation*" (emphasis added). The conversations between Smith and Standard resulted in the execution of an agreement of employment on November 19, 1980.

Smith was hired for a period of three years at a base salary of $100,000 the first year, commencing January 1, 1981; $110,000 for the second year, commencing January 1, 1982; and $110,000 for the third year, commencing January 1, 1983. This annual base salary was to be paid in equal monthly installments on the last day of each month during the term of the agreement. In addition to the base compensation, the agreement provided that Standard would pay a bonus of 1% in respect to the year 1981, of the "profits" of each business corporation or entity in which Standard acquired a controlling interest or the entire assets in a transaction brought to Standard's attention by and closed, in whole or in part, as a result of Smith's efforts. The agreement further provided that the bonus to be paid Smith for any year in respect to any corporation acquired during that calendar year would be based upon the "profits" of the acquired corporation for the period commencing with the first day of the month following the acquisition by Standard and ending with December 31 of such year.

The agreement between Smith and Standard provided further that "[t]he bonus payable for any year shall be based upon the profits realized by said corporation or entity, as determined by Standard's independent auditors and shall be paid to [Smith] within thirty (30) days after the completion and certification of the financial report of Standard and the submission thereof to Standard by said auditors." Thus any bonus to be paid to Smith as part of his "total compensation" which was based on the "profits" of any corporation acquired by Standard during the year 1981 as a result of Smith's efforts could not be determined until some indefinite period after December 31, 1981.

Special Term concluded that the agreement between Costello and Standard to pay Costello an amount "equal to

30% of Smith's total compensation for the first year of his employment" was divisible into two parts, one of which was to be determined by the base salary paid to Smith during the first year and the other based upon a computation of the bonuses earned by Smith in the first year. It held that Standard's obligation became fixed when it signed the employment contract with Smith and that computation of the amount of the compensation was merely a "ministerial act" (121 Misc 2d 282, 285).

I find little in this record to support this conclusion. Indeed the general rule respecting divisibility would require a contrary conclusion. (See 56 NY Jur, Statute of Frauds, § 322 *et seq*.) Nor can I find support in the record for the conclusion that the underlying contract (i.e., Smith's contract with Standard) was capable of being "fully performed and computed within one year." Neither Smith's death nor his voluntary or involuntary termination of his contract with Standard would constitute performance thereunder. (See *Blake v Voigt,* 134 NY 69; *Wahl v Barnum,* 116 NY 87; *Cohen v Bartgis Bros. Co.,* 264 App Div 260, affd 289 NY 846.) As this court observed in *Bartgis* (*supra,* at pp 261-262) "We must distinguish between 'performance' which fulfils the contract and circumstances which defeat its purpose." In any event, the "agreement" that is the subject of this lawsuit is Costello's alleged agreement with Standard, not Smith's employment contract, albeit, reference to that document is necessary to determine Standard's obligation under the Costello agreement, if any. Thus the year to be measured in determining the applicability of the Statute of Frauds is the year from the date of that alleged agreement, i.e., June 2, 1980.

The test of whether an agreement violates section 5-701 (subd a, par 1) of the General Obligations Law, New York's Statute of Frauds, and thus is unenforceable, is whether " 'by its terms' the agreement is not to be *performed* within a year". (*Freedman v Chemical Constr. Corp.,* 43 NY2d 260, 265, emphasis added; *North Shore Bottling Co. v Schmidt & Sons,* 22 NY2d 171, 175-176; *Nat Nal Serv. Stas. v Wolfe,* 304 NY 332, 335.) Here the alleged "performance" to which Standard purportedly agreed, was to pay a commission to Costello of 30% of Smith's total compensa-

tion for the first year of his employment, if it hired Smith. While that obligation may have become fixed at the time Standard and Smith signed their contract, the *performance* of that obligation could not occur until the amount of the "total compensation" became known. When measured from the date of the alleged oral agreement, as it must be, it is clear that such obligation was not by its terms to be *performed* within one year. I find no valid distinction between the alleged agreement presented here and that which was the subject of inquiry in *Briefstein v Rotondo Constr. Co.* (8 AD2d 349). Although there we deemed a more basic objection to enforcement of the oral contract to be the fact that the "obligation to pay 25% of the corporate profits is not in actual terms limited to a year, or to the year the contract runs, or to any year or any period", we also found that "the corporate profits, if 'determined by usual accounting methods' [would] not be ascertainable until a period beyond the year during which the contract would run, and hence [would] not be payable or performable within the year". (*Briefstein v Rotondo Constr. Co., supra,* at pp 350, 351.) So too, in the case at bar, Smith's total compensation for the year 1981, could not be ascertained until a period beyond the year during which the contract between Costello and Standard would run.

That this was at least Costello's understanding of its contract with Standard is made clear by its letter of December 30, 1980 to Standard in which it billed for $30,000 said then to be due and indicated that it "will hold the balance of our billing until December 31, 1981. At that time, we will be able to assess, based on his [Smith's] success, an additional 30% of the 1% bonus of 1981 acquisitions."

Even accepting that there was "performance" by Costello and the "acceptance" of that performance by the defendant the alleged agreement would nevertheless be unenforceable under the Statute of Frauds. Except in circumstances not here present, the rule is that only full performance will take an oral agreement not to be performed within a year out of the Statute of Frauds. (See 56 NY Jur, Statute of Frauds, § 304; *Tyler v Windels,* 186 App Div 698, affd 227 NY 589.)

The majority would grant summary judgment to the plaintiff, presumably "on an unpleaded cause of action [which] the proof supports * * * and [since] the opposing party has not been misled to its prejudice". They assert, without analysis or citation that "the affirmative defense based upon the Statute of Frauds is without merit since the defendant is bound by the terms of the August 7, 1980 letter agreement." The majority finds a "written agreement" between the parties based on the "offer" contained in plaintiff's letter and defendants "acceptance" of the offer by acceptance of the benefits of the plaintiff's services. They assert that defendant thus "assented to the terms set forth in the letter of August 7, 1980." While we cannot argue with the hornbook rule that an offer may be accepted by conduct or acquiescence, that rule has no applicability to the case at bar.

Section 5-701 of the General Obligations Law provides, in pertinent part:

"Agreements required to be in writing

"a. Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and *subscribed by the party to be charged therewith,* or by his lawful agent, if such agreement, promise or undertaking:

"1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime" (emphasis added).

To find that "defendant is bound by the terms of the August 7, 1980 letter agreement" and grant summary judgment as to liability based on such a finding is to ignore the statutory requirement that not only must there be a writing, but the writing must be subscribed by the party to be charged therewith. There is not even the slightest suggestion that Standard, which is sought to be charged with the terms of that letter, *subscribed* to it.

Accordingly, the order dismissing the affirmative defenses contained in paragraphs 9, 10 and 11 of the answer and denying defendant's motion for summary judgment, should be modified to the extent of reinstating the affirma-

tive defense set forth in paragraph 10, and granting summary judgment to defendant dismissing the complaint.

CARRO and MILONAS, JJ., concur with MURPHY, P. J.; KUPFERMAN, J., dissents in part and would affirm on the opinion of GREENFIELD, J.; ALEXANDER, J., dissents in an opinion.

Order, Supreme Court, New York County, entered on January 26, 1983, modified, on the law, by granting summary judgment to plaintiff on the issue of liability on the first cause of action, and remanding the matter for an assessment of damages, and as modified, the order is affirmed. Plaintiff-respondent shall recover of defendant-appellant $75 costs and disbursements of this appeal.