■ BUCHBINDER TUNICK & CO., as Successor to BUCHBINDER, STEIN, TURICK & PLATKIN, Appellant, v MANHATTAN NATIONAL LIFE INSURANCE COMPANY, Respondent. [631 NYS2d 148] —Order, Supreme Court, New York County (Beatrice Shainswit, J.), entered December 6, 1994, which denied plaintiff's motion for summary judgment declaring that the subject life insurance policy is in effect, and granted defendant's cross motion for summary judgment dismissing the complaint, unanimously modified, on the law, to deny defendant's motion for summary judgment and to remand for a hearing on whether plaintiff received defendant's revocation letter dated September 17, 1993 before sending its premium check dated September 24, 1993, and otherwise affirmed, without costs or disbursements.

On July 27, 1989, plaintiff, an accounting firm, purchased a $350,000 "key-man" term life insurance policy on the life of its founding partner Raymond Buchbinder, then 76 years old. Plaintiff paid the initial premium as well as the next three annual premiums.

Defendant insurer's July 1993 original premium notice advised that the annual premium was due and owing and that plaintiff was required to transmit the $15,972.50 payment within a 31-day grace period, expiring on August 27, 1993. Defendant thereafter sent plaintiff two computer generated "reminder" notices advising that payment was overdue. Plaintiff claims that it never received the first one, but does not challenge that defendant generated and sent the notice in the normal course of its business. The second "reminder" was sent by defendant on August 25, 1993, only two days before the expiration of the grace period. Entitled "LATE PAYMENT OFFER", this second reminder differs from the first in that it does *not* contain a back-page liability limitation advising the insured, *inter alia*, that: "By sending this notice, the Company does not waive any lapse of the policy because of the non-

payment of any previous premiums due thereunder, nor waive any expiration of the policy in accordance with its terms." The first reminder's back-page paragraph also states that the premiums must be paid on or before the due date or within 31 days thereafter, and that: "Payments mailed later than 31 days after the due date will not be applied to payment of premium, but will be deposited by the Company pending reinstatement or refund as payor may direct." The "LATE PAYMENT OFFER" notice contains no statement requiring the insured to file a new application for insurance.

Plaintiff concedes receiving the second notice and contends that its payment on September 24, 1993 was made within a reasonable time thereafter. However, defendant sent a letter dated September 17, 1993, one week before plaintiff's dated check, stating: "We did not receive your premium payment of $15,972.50 due July 27, 1993. Consequently, your * * * policy has lapsed and, unfortunately, no longer provides life insurance coverage." The letter goes on to advise plaintiff that it may reapply for coverage.

Plaintiff did, in fact, submit an application, on September 27, in attempting to reinsure Buchbinder. During the period in which defendant reconsidered the insurance application, it deposited the September 24 check pending reinstatement. On December 7, 1993, plaintiff's premium payment was returned and the application for insurance rejected. Buchbinder is 80 years old and in failing health, and apparently no longer insurable.

The IAS Court denied plaintiff's motion for summary judgment and granted defendant's cross motion for summary judgment dismissing the complaint holding that the second late notice did not operate to revive the offer of late payment, which expired at the end of the 31-day grace period. We disagree with that holding and construe the second notice, according to its terms, as a "LATE PAYMENT OFFER".

We accept defendant's position that the premium was due as of July 27, 1993 and that plaintiff could have tendered the premium as late as August 27, 1993 despite plaintiff's assertion that it never received the first notice, issued approximately July 7, 1993. Defendant's records show that its computer generates reminder notices 20 days before payment is due. The computer program then sent the aforementioned "LATE PAYMENT OFFER" 28 days into the grace period, in the normal course of business.

If one accepts the insurer's interpretation of the "LATE PAYMENT OFFER" as merely another "reminder" notice, it

is apparent that this notice, admittedly sent as a matter of course 28 days into the 31-day grace period, would not usually be received by the insured before the end of the grace period, much less allow enough time for the insured to remit payment before the end of the period. Therefore, this second late notice has no force or effect as a "late reminder notice".

Ambiguities in an insurance contract are to be construed favorably to the insured and strictly against the insurer (*Royal Ins. Co. v 342 Madison Ave. Assocs.*, 208 AD2d 389, 390). The second late notice sent by defendant, which states both that the "Premium Notice" is a "LATE PAYMENT OFFER" and that "[i]n the event payment is not made by the due date * * * or within the 31-day grace period after the due date, the policy will terminate or lapse", is ambiguous. Construing such competing clauses strictly against the insurer and favorably for the insured compels the conclusion that defendant was offering plaintiff one last chance to keep its policy, despite the preprinted language concerning termination.

The general public policy against discontinuing insurance policies mandates that a cancellation notice is ineffectual where it is equivocal or indefinite (*see*, 69 NY Jur 2d, Insurance, § 836, at 250). Thus, the second notice, which was generated 28 days into the 31-day grace period and contained the language indicated, could not have acted as a cancellation notice.

Moreover, this second notice could not have been realistically intended to "remind" plaintiff to remit payment since it did not arrive until two or three days after the grace period expired. Plaintiff is a New York resident and defendant is based in Cincinnati, Ohio. Plaintiff asserts that mail delivery normally takes up to five days between the two cities, which assertion is supported by the fact that plaintiff's September 24th tender was not received by defendant until September 29th. Therefore, defendant's interpretation of the second notice as *only* a "reminder" to remit payment would mean the second notice served no actual purpose.

Moreover, defendant's use of the word "OFFER" in the second notice would lead a reasonable person to believe that there was an offer of an extension of the grace period capable of acceptance by the insured. Interpreting the policy favorably to the insured in this manner would mean it could have been extended by an acceptance within a reasonable time after the receipt of the "LATE PAYMENT OFFER", or until the offer was revoked by defendant (*see*, Calamari & Perillo, Contracts § 2-20, at 91-93 [3d ed]).

The third "lapse" notice sent by the insurer *would* be effective to revoke the offer contained in the second notice, the "LATE PAYMENT OFFER". However, the issue remains whether that lapse notice dated September 17 was received before plaintiff sent the premium "accepting" the "offer". Thus, a limited hearing should be held to determine whether plaintiff received the "lapse" notice before it sent the premium. If it did, then the insurance policy was rightfully cancelled. If not, and the third notice and the payment passed in the mail, then the offer was timely accepted and the insurance policy should have been continued (*see, id.*, § 2-23, at 117).

While a revocable offer to a bilateral contract may be revoked at any time prior to acceptance, that revocation, or rejection, is effective at the moment of receipt (*id.*, at 114). On the other hand, acceptance is effective upon dispatch (*id.*, at 114-115). "[T]he contract springs into existence at the time of such mailing or sending [by the offeree], because of implied authority in the carrier of the message to receive the reply" (*Wester v Casein Co.*, 206 NY 506, 513).

While the offeror may dictate that acceptance is effective only upon receipt by the offeror, that intention must be expressly stated (Calamari & Perillo, *op. cit.*, at 118, citing *Vassar v Camp*, 11 NY 441 [1854]). In this case, there was no such express requirement. In fact, the back-page disclaimer to the first late notice (the only notice that refers to a mode of communicating payment) states that "[p]ayments *mailed* later than 31 days after the due date will not be applied to payment of premium" (emphasis added), thereby indicating that the payment, or in this case acceptance, could arrive after the expiration of the grace period and still have to be accepted.

While defendant asserts that there is no question plaintiff received the "lapse" letter dated September 17, 1993 before it sent its premium check dated September 24, there is evidence that, in fact, the September 17 letter, which was generated on that Friday, may not have been sent out until the following Monday, September 20. In that case, since, as noted previously, the mail delivery period between Cincinnati and New York takes as long as five days, plaintiff may have sent its premium accepting the offer *before* it received the revocation. The fact that plaintiff did not send its insurance reapplication in reply to the "lapse" letter until September 27 is further support of that possibility. If plaintiff had received the revocation before sending its acceptance it might reasonably have attached the application to its premium payment instead of sending it by separate mail three days later. Concur—Ellerin, J. P., Wallach, Nardelli, Tom and Mazzarelli, JJ.