[890 NYS2d 803]

VIC'S PARKING CORPORATION, Plaintiff, v CHAIM NASH, Also Known as BEN NASH, et al., Defendants.

Supreme Court, New York County, October 13, 2009

### APPEARANCES OF COUNSEL

*Donald M. Nussbaum*, New York City, for plaintiff. *Altman Schochet*, New York City (*Zalman Schochet* of counsel), for defendants.

### OPINION OF THE COURT

SHIRLEY WERNER KORNREICH, J.

In this action for breach of a contract to sell a leasehold, the plaintiff seller moves, pursuant to CPLR 3212, for summary judgment and dismissal of defendants' affirmative defenses. Defendants cross-move, pursuant to CPLR 3212, for summary judgment dismissing the complaint.

The complaint contains a single cause of action for breach of contract. It alleges that the purchasers, defendants Nash and Hazan, breached the contract by stopping payment on their deposit checks. The answer contains five affirmative defenses: (1) retention of the $225,000 deposit is an unenforceable penalty; (2) liquidated damages are limited to $75,000 pursuant to a termination clause in the contract; (3) there was no contract formed prior to breach; (4) plaintiff did not have permission from the landlord to convey the lease; and (5) lack of consideration.

For the reasons that follow, plaintiff's motion for summary judgment is denied and defendants' cross motion is granted.

## Background

Plaintiff, Vic's Parking Corporation, is the lessee of the premises 416, 418, 420, 426 and 428, Albee Square, Brooklyn, New York 11201. It is undisputed that on January 17, 2008, by overnight mail, defendants' attorney, Zalman Schochet, sent a contract to sell plaintiff's leasehold, signed by defendants, together with defendant Nash's check in the amount of $112,500, to plaintiff's attorney, Barry Levine, the escrowee designated in the contract. Mr. Schochet's cover letter recited that a second check from defendant Hazan in the same amount was enclosed. Mr. Levine disputes it. He says that he received defendant Hazan's check five days later, on January 22, 2008.

The purchase price was $2,250,000. The contract defined $225,000, 10% of the purchase price, as the "First Deposit," payable by the purchasers upon their execution of the agreement. The contract provided that it was binding when it was properly executed and delivered by the seller to the purchasers. (Contract § 10.5.) It further provided that it could be cancelled upon written notice from the purchasers on or before February 18, 2008 and, in that event, the escrowee was to pay $75,000 to the seller and $150,000 to the purchasers. (Contract § 2.2.) Section 10.1 provided that the contract and any of its provisions could only be waived, modified or amended by a writing signed by the party against whom enforcement of such waiver, modification or amendment was sought. Mr. Levine's moving af-

fidavit makes the following allegations. Mr. Levine went to his bank on January 18 with defendant Nash's check,* but there were insufficient funds in the account to cover it. On January 24, Chase sent a notice that Mr. Nash's check was dishonored due to a stop payment. Mr. Levine received Mr. Hazan's check on January 22. A stop payment advice dated January 28 was issued by Chase for Mr. Hazan's check. The record contains deposit slips and stop payment notices to confirm the dates in Mr. Levine's affidavit. By overnight letter, dated January 22, 2008, Mr. Levine returned the contract signed by the seller to Mr. Schochet, who must have received it on January 23. Mr. Levine's January 22 transmittal letter is annexed to his affidavit.

Mr. Schochet's opposing affidavit states that prior to receiving the signed contract, he told Mr. Levine that the deal was off. Mr. Schochet avers that on or about January 18, 2008, he spoke to Mr. Levine by telephone, who said that there were insufficient funds to cover Mr. Nash's check and that there was no contract until there were sufficient funds to cover both checks. Mr. Schochet claims that shortly after the phone conversation he received a January 18 e-mail, which is attached as an exhibit. Mr. Levine's January 18 e-mail, which was addressed to Mr. Nash, with a copy to Mr. Schochet, stated that Mr. Levine's bank had rejected Mr. Nash's check due to insufficient funds, that Mr. Levine had returned to his bank after Mr. Nash assured him that the funds had been transferred to cover the check, that the money still wasn't there upon Mr. Levine's return, that he had now received an e-mail from Mr. Nash stating that the money had been transferred and that he would attempt to deposit the check again, but would not release any documents until the check cleared. Mr. Schochet says that "shortly thereafter" he called Mr. Levine and told him that Mr. Nash was putting a stop payment on his check because he and Mr. Hazan did not want to consummate the transaction. "Several days later," Mr. Schochet says he received the executed contract from Mr. Levine. Mr. Levine did not submit a reply affidavit.

## Discussion

It is well established that summary judgment may be granted only where it is clear that no triable issue of fact exists. (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 325 [1986].) The burden is upon

---

* Mr. Nash's check was drawn on an account in the name of PC Wireless Warehouse, Inc.

the moving party to make a prima facie showing of entitlement to summary judgment as a matter of law. (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *Friends of Animals v Associated Fur Mfrs.*, 46 NY2d 1065, 1067 [1979].) Failure to make such a prima facie showing requires a denial of the summary judgment motion, regardless of the sufficiency of the opposing papers. (*Ayotte v Gervasio*, 81 NY2d 1062, 1063 [1993].) If a prima facie showing has been made, the burden shifts to the opposing party to produce evidentiary proof sufficient to establish the existence of material issues of fact. (*Alvarez*, 68 NY2d at 324; *Zuckerman*, 49 NY2d at 562.) Uncontradicted facts are deemed admitted. (*John William Costello Assoc. v Standard Metals Corp.*, 99 AD2d 227, 229 [1st Dept 1984], *appeal dismissed* 62 NY2d 942 [1984].) Moreover, the papers submitted in support of and in opposition to a summary judgment motion are examined in the light most favorable to the party opposing the motion. (*Martin v Briggs*, 235 AD2d 192, 196 [1st Dept 1997].) Mere conclusions, unsubstantiated allegations, or expressions of hope are insufficient to defeat a summary judgment motion. (*Zuckerman*, 49 NY2d at 562.) Upon the completion of the court's examination of all the documents submitted in connection with a summary judgment motion, the motion must be denied if there is any doubt as to the existence of a triable issue of fact. (*Rotuba Extruders v Ceppos*, 46 NY2d 223, 231 [1978].)

No contract is formed where a buyer's offer is withdrawn prior to the seller's acceptance pursuant to the terms of the contract. (*Senzamici v Young*, 174 AD2d 831 [3d Dept 1991] [summary judgment granted dismissing seller's complaint for down payment where offer rescinded before receipt of seller's signed contract]; *cf. Sorenson v Brahver*, 43 AD3d 903 [2d Dept 2007] [question of fact where seller denied that contract was orally revoked prior to purchaser's receipt of signed contract]; *Korabel v Natoli*, 210 AD2d 620 [3d Dept 1994] [stop payment of down payment check was breach where offer accepted without knowledge that payment was stopped].)

Unless a contract expressly provides that it is not effective until it is received, an acceptance is effective upon dispatch. (*Buchbinder Tunick & Co. v Manhattan Natl. Life Ins. Co.*, 219 AD2d 463, 466 [1st Dept 1995].) Here, the contract provided that it was effective upon delivery, not receipt, and it is undisputed that Mr. Levine delivered the contract to the overnight carrier on January 22. Mr. Schochet says he told Mr. Levine that the deal was off "shortly [ ]after" January 18, which

does not prove that the offer was revoked prior to January 22. But that is not the end of the analysis.

Under the terms of the contract, Mr. Levine's written statement that he would not release any documents until Mr. Nash's check cleared was a writing sufficient to bind him to a contract modification, pursuant to section 10.1. Plaintiff argues that the contract became binding when it was returned to Mr. Schochet, pursuant to section 10.5, while defendants urge that on January 18, plaintiff modified the terms of the contract in Mr. Levine's e-mail stating that he would not release any documents until Mr. Nash's check cleared, which never occurred.

Defendants are entitled to summary judgment dismissing the complaint based upon the third affirmative defense that the contract was not formed. The court agrees that Mr. Levine's January 18 e-mail was a binding amendment, pursuant to section 10.1, that unless the check cleared, he would not return the signed contract. Accordingly, Mr. Levine was not free to summarily return the contract before the check cleared and then claim that defendants breached by stopping payment on their checks. The remaining affirmative defenses are dismissed as moot.

Accordingly, it is ordered that plaintiff's motion for summary judgment dismissing defendants' affirmative defenses is granted solely to the extent that the first, second, fourth and fifth affirmative defenses are dismissed as moot and in all other respects the motion is denied; and it is further ordered that defendants' cross motion for summary judgment dismissing the complaint is granted.