(February 7, 2012)

■ ZALMAN SILBER, Appellant, v NEW YORK LIFE INSURANCE COMPANY, Respondent. [938 NYS2d 46]—

The determination of this appeal requires the Court to invoke the most basic tenets of contract law. Plaintiff worked as a life insurance agent for defendant from 1987 until his agency contract was terminated on July 16, 2008. By summons and verified complaint dated May 12, 2010, plaintiff commenced this breach of contract action. Plaintiff claims that defendant's termination of plaintiff and refusal to reinstate him or credit him with service time towards his retirement benefit violated an oral agreement between the parties, which caused plaintiff approximately $3,000,000 in damages.

Prior to discovery, plaintiff moved for summary judgment as to liability, arguing that the parties had entered into an oral agreement "that [p]laintiff would resign from [d]efendant pending the sale of his interest in a life settlement company . . . following which he was to be reinstated." Plaintiff asserted that the agreement was then memorialized in a letter from defendant to plaintiff. Plaintiff also argued that defendant should be equitably estopped from denying that it agreed to reinstate plaintiff if he divested himself of his outside interests.

In opposition to the motion, defendant submitted an affidavit attesting to the following: In November 2007, defendant learned that plaintiff had an ownership interest in a life settlement company, which purchased blocks of life insurance policies previously viaticated by their owners and then sold them to other financial institutions, including several prominent hedge funds.[1]

Defendant asserts that it prohibits its agents from participating in such business because the industry is underregulated, with significant potential for fraud and abuse. Defendant further asserts that plaintiff never disclosed his interest in this business to defendant nor secured approval as required by defendant's company rules. In a March 2008 meeting, plaintiff

---

1. A life settlement or viatical insurance company purchases life insurance policies from policy owners before the policies mature. A policy typically sells at a price discounted from the face amount of the policy but in excess of the premiums paid or cash surrender value. This allows a terminally ill or elderly policy holder access to the insurance money before his or her death. The word viatical comes from viaticum, the Latin word meaning "provisions for a journey," and in the Catholic faith refers to the communion given to a person near death as part of the Last Rites.

was advised that he would be required to divest himself of his interest in the business. Defendant states that despite subsequent efforts to discuss the outstanding issue of his life settlement business, plaintiff failed to respond.

In support of his motion, plaintiff submitted, among other documents, correspondence between himself and defendant. In a letter to plaintiff, dated May 29, 2008, defendant's senior vice president (Senior VP) stated, in pertinent part:

"As we discussed, you agreed that you would resign as an agent of New York Life and that once your [life settlement] business was sold you would apply for reinstatement of your contract. I agreed that we would review your application for reinstatement at that time, and so long as all of your other outside business activities were acceptable to the Company, and there were no intervening compliance issues, we would reinstate your contract.

"If you are in agreement with the terms set forth in this letter, please sign below and return a copy of this letter to me." It is undisputed that plaintiff did not sign and return the letter or resign. In a June 12 letter, the Senior VP stated that he had not received a response to the May 29 letter, and that he had unsuccessfully attempted to reach plaintiff by telephone. The Senior VP wrote that he was suspending plaintiff, and, unless he heard from him by June 16, he would terminate his agency contract. He also stated that the letter served as plaintiff's 30 days notice. The delivery receipt in the record indicates, and plaintiff does not dispute, that the letter was delivered to plaintiff's home the following day.

On June 13, plaintiff was arrested on felony criminal charges of impersonating a doctor and performing gynecological examinations on young women.[2] Plaintiff responded to the Senior VP by letter dated June 16, 2008, explaining that he had been "tied up" and unable to respond sooner. Plaintiff's letter suggested that they address issues such as whether defendant would agree to certain underwriting concessions, the need to review plaintiff's other insurance products, credit of his service time upon reinstatement, and the sale of his life settlement business.

In a June 17, 2008 letter, before he received plaintiff's June 16 letter, the Senior VP again wrote to plaintiff to confirm that he was suspended as of June 16, and that his contract was being terminated effective July 16, 2008. Plaintiff responded by letter on June 20, 2008, claiming that he did not receive the

---

2. The charges were dismissed the following year in October 2009.

June 12 letter and that their "correspondences must have crossed in the mail."

In a June 26, 2008 letter, the Senior VP terminated plaintiff and advised him that the allegations of plaintiff's recent arrest "raise serious compliance issues" and preclude his reinstatement. On July 18, defendant notified the New York Insurance Department that it had terminated plaintiff effective July 16, 2008 because of his "participat[ion] in life settlements in violation of Company policy" and his "arrest[ ] for impersonating a doctor."

Plaintiff alleges that after dismissal of the criminal charges a year later, his license to sell insurance was renewed by the New York Insurance Department, and in 2010 he applied for reinstatement with defendant. Defendant denied his application on March 10, 2010, without providing a reason.

The motion court denied plaintiff's summary judgment motion, granted summary judgement in favor of defendant, and dismissed the complaint pursuant to CPLR 3212 (b). The motion court found that plaintiff's documentary evidence demonstrated that there was no contract, oral or otherwise, between the parties regarding plaintiff's reinstatement.

For the reasons set forth below, we agree with the motion court that there was no "meeting of the minds" constituting the formation of a contract between the parties. It is axiomatic that a party seeking to recover under a breach of contract theory must prove that a binding agreement was made as to all essential terms (*Paz v Singer Co.*, 151 AD2d 234, 235 [1989]). Courts look to the basic elements of the offer and the acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract (*Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp.*, 93 NY2d 584, 589 [1999]). An agreement must have sufficiently definite terms and the parties must express their assent to those terms (*id.*).

In this case, plaintiff claims that the parties entered into an oral agreement, which was then confirmed in the May 29 letter from defendant. This contention is directly refuted by plaintiff's June 16 letter, in which he attempts to negotiate terms related to his employment and reinstatement. Plaintiff's claim that there would be no point in "moving forward" without resolving one of these terms indicates that it is a material term. Thus, plaintiff's own correspondence clearly indicates that material terms had not been agreed upon. Plaintiff's failure to show that the parties agreed to definite terms is fatal to his claim of a prior oral agreement.

Thus, as defendant asserts, the May 29 letter was merely an offer that plaintiff did not accept, and indeed rejected. " 'It is a fundamental principle of contract law that a valid acceptance must comply with the terms of the offer' " (*Lamanna v Wing Yuen Realty*, 283 AD2d 165, 166 [2001], *lv denied* 96 NY2d 719 [2001], *quoting Roer v Cross County Med. Ctr. Corp.*, 83 AD2d 861, 861 [1981]). Where "the offer specifies the . . . mode of acceptance, an acceptance . . . in any other manner[ ] is wholly nugatory and ineffectual" (*Rochester Home Equity v Guenette*, 6 AD3d 1119, 1120 [2004] [internal quotation marks and citation omitted]). Furthermore, a purported acceptance that is "qualified with conditions" is a rejection of the offer (*Lamanna*, 283 AD2d at 166 [internal quotation marks omitted]; *see Homayouni v Banque Paribas*, 241 AD2d 375, 376 [1997] ["whenever a purported acceptance is even slightly at variance with the terms of an offer, the qualified response operates as a rejection and termination of . . . the initially offered terms"]).

Defendant's May 29 letter specified the manner of acceptance by providing, "If you are in agreement with the terms set forth in this letter, please sign below and return a copy of this letter to me." Plaintiff concedes that he did not return a signed copy of the May 29 letter as required in order to accept defendant's offer. Nor did he indicate his acceptance by complying with any of the terms set forth in the letter. Plaintiff did not resign, and his June 16 letter indicates that he had not closed on the sale of his life settlement business.

Not only did plaintiff fail to accept defendant's offer, his June 16 letter specifically rejected the May 29 offer. As discussed above, plaintiff's letter is an attempt to further negotiate the terms of his employment or reinstatement. The letter specifically conditions his agreement on the resolution of certain outstanding employment/reinstatement issues. As such, the June 16 letter was a rejection of defendant's May 29 offer.

Even were we to deem plaintiff's June 16 letter an acceptance, plaintiff received defendant's revocation of the May 29 offer prior to acceptance. Revocation is effective at the moment that the offeree receives it, so long as the offer has not yet been accepted (*see Morton's of Chicago/Great Neck v Crab House*, 297 AD2d 335, 337 [2002]; *Buchbinder Tunick & Co. v Manhattan Natl. Life Ins. Co.*, 219 AD2d 463, 466 [1995]). Here, the June 12 letter notifying plaintiff of his impending termination, which was sent to plaintiff by overnight mail and received on June 13, constituted a revocation of the offer.

Since plaintiff's promissory estoppel claim was not pleaded as a cause of action in the complaint, the motion court correctly

declined to address it (*see Moscato v City of New York [Parks Dept.]*, 183 AD2d 599 [1992]). We have considered plaintiff's remaining contentions and find them unavailing. Concur— Gonzalez, P.J., Tom, Catterson, Richter and Román, JJ.